686 F.2d 692
 1981-2 Trade Cases 64,414, 1982-83 Trade Cases 65,013
 Edward RONWIN, Plaintiff-Appellant,
v.
STATE BAR OF ARIZONA, Carlock, George Read and Wanda Myers,
Robert D. and Judith Wolfinger, Harold J. and Jane Doe
Richmond, James L. and Jane Doe Karman, Howard H. and Jane
Doe Hoover, Charles R. and Jane Doe, Defendants-Appellees.
 No. 80-5004.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 16, 1981.
Decided Dec. 14, 1981.
As Amended on Rehearing Sept. 8, 1982.
 
 1
 Edward Ronwin, pro se.
 
 
 2
 Timothy J. Burke, Fennemore, Craig, von Ammon & Udall, Phoenix, Ariz., argued, for defendants-appellees; Philip E. von Ammon, Phoenix, Ariz., on brief.
 
 
 3
 Appeal from the United States District Court for the District of Arizona.
 
 
 4
 Before FERGUSON and BOOCHEVER, Circuit Judges, and HATTER,* District Judge.
 
 HATTER, District Judge:
 
 5
 Ronwin sued the Arizona State Bar ("Bar") and the individual members (and their spouses) of the Committee on Examinations and Admissions of the Arizona Supreme Court ("Committee"), alleging that they had violated federal antitrust laws in grading the 1974 Arizona bar examination that Ronwin failed. The district court denied Ronwin's motion for recusal and dismissed the action for failure to state a claim, lack of jurisdiction, and lack of standing. We affirm the denial of the recusal motion, but reverse the dismissal decision as to the individual committee members[1] and remand for further proceedings.
 
 
 6
 * FACTS
 
 
 7
 Ronwin took the Arizona bar examination in February, 1974. He was notified two months later that he had failed the examination. The Arizona Supreme Court refused to review his exam, and the United States Supreme Court denied certiorari. See Ronwin v. Committee on Examination and Admissions, 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974).[2]
 
 
 8
 Ronwin filed this antitrust action in March, 1978, alleging that defendants violated section 1 of the Sherman Act, 15 U.S.C. § 1, by illegally restricting competition among attorneys practicing in Arizona. The essence of Ronwin's complaint is that the Committee graded the exam to admit a predetermined number of persons, without reference to "achievement by each bar applicant of a pre-set standard (of competence)." For purposes of their motion to dismiss, defendants did not challenge the accuracy of Ronwin's allegations.[3]
 
 
 9
 At the time Ronwin took the bar exam, the Committee was authorized to determine whether bar applicants possessed the "necessary qualifications and ... fulfill(ed) the requirements prescribed by the (Bar) board of governors as approved by (the Arizona Supreme Court) ...." Ariz.Sup.Ct. Rule 28(a) (1973) (amended in 1975 to create two separate committees). The Committee consists of seven active members of the State Bar who, upon the recommendation of the Bar's Board of Governors, are appointed by the Arizona Supreme Court. Id. As Ronwin noted in paragraph II of his complaint, the State Bar is a private entity to which all Arizona lawyers belong, and the individual defendants were members of "the Committee ... and, as such, presided over and conducted the process by which applicants for membership in (the) Bar were examined...."
 
 II
 DISMISSAL OF RONWIN'S ACTION
 
 10
 The district court gave three reasons for dismissing the action: (1) the complaint failed to state a claim upon which relief could be granted; (2) the court lacked jurisdiction over the subject matter; and (3) Ronwin lacked standing to seek the relief requested. These reasons will be discussed seriatim.
 
 
 11
 A. Failure to State a Claim-State-Action Immunity
 
 
 12
 The district court's ruling that Ronwin had failed to state a claim was apparently based on its acceptance of defendants' argument that bar grading procedures are immune from federal antitrust laws. Relying primarily on Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the defendants argue that, even assuming, arguendo, the grading formula was anticompetitive, the Committee's status as a state agent renders its actions absolutely immune from antitrust liability. We disagree.
 
 
 13
 In Bates, the Supreme Court held that a disciplinary rule adopted by the Arizona Supreme Court and enforced by the Arizona state bar, which prohibited lawyers from advertising, did not violate the federal antitrust laws under the state-action exemption first announced in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). 433 U.S. at 359-61, 97 S.Ct. at 2696-97. The Court stressed that the real party in interest was the Arizona Supreme Court because it had adopted the challenged restraint. Because the challenged restraint had been specifically adopted by the state acting, through the State Supreme Court, as sovereign, it therefore reflected a clear and affirmative articulation of state policy. Id. at 361-62, 97 S.Ct. at 2697-98. In the present case, by contrast, the challenged restraint was not adopted or directly authorized by the Arizona Supreme Court.
 
 
 14
 In a more analogous case, the Supreme Court held that the activities of a county and a state bar association in publishing and enforcing a minimum-fee schedule were not shielded by the state-action exemption. Goldfarb v. Virginia State Bar, 421 U.S. 773, 788-92, 95 S.Ct. 2004, 2013-15, 44 L.Ed.2d 572 (1975). The Court stated:
 
 
 15
 The threshold inquiry in determining if an anticompetitive activity is state action of the type the Sherman act was not meant to proscribe is whether the activity is required by the State acting as sovereign. Parker v. Brown, 317 U.S. at 350-352 (63 S.Ct. at 313-14); Continental Co. v. Union Carbide, 370 U.S. 690, 706-07 (82 S.Ct. 1404, 1414-15, 8 L.Ed.2d 777) (1962). Here we need not inquire further into the state-action question because it cannot fairly be said that the State of Virginia through its Supreme Court Rules required the anticompetitive activities of either respondent. Respondents have pointed to no Virginia statute requiring their activities; state law simply does not refer to fees, leaving regulation of the profession to the Virginia Supreme Court; although the Supreme Court's ethical codes mention advisory fee schedules they do not direct either respondent to supply them, or require the type of price floor which arose from respondents' activities.... It is not enough that, as the County Bar puts it, anticompetitive conduct is "prompted" by state action; rather, anticompetitive activities must be compelled by direction of the State acting as a sovereign.
 
 
 16
 Id. at 790-91, 95 S.Ct. at 2014-15.
 
 
 17
 Subsequent Supreme Court decisions underscore the distinction between Bates and Goldfarb. The Court has repeatedly emphasized in these more recent decisions that for the state-action exemption to apply the challenged restraint must be clearly articulated and affirmatively expressed as state policy and be actively supervised by the state itself. See, e.g., City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 410-13, 98 S.Ct. 1123, 1135-36, 55 L.Ed.2d 364 (1978); New Motor Vehicle Board of California v. Orrin W. Fox Co., 439 U.S. 96, 109, 99 S.Ct. 403, 411, 58 L.Ed.2d 361 (1978); California Retail Liquor Dealers Association v. Midcal Aluminum, Inc., 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); Community Communications Co. v. City of Boulder, --- U.S. ----, ---- - ----, 102 S.Ct. 835, 839-41, 70 L.Ed.2d 810 (1982). The failure to meet either requirement precludes application of the antitrust immunity. Midcal, 445 U.S. at 105, 100 S.Ct. at 943.
 
 
 18
 Viewing the present case at this stage of the proceedings in light of the Court's state-action requirements, we conclude that the challenged grading procedure fails to qualify for antitrust immunity. It has not been established that the alleged restraint was "clearly articulated and affirmatively expressed as state policy," Midcal 's first requirement. Id. Like the defendants in Goldfarb, the defendants here have no statute or Supreme Court Rule to point to as directly requiring the challenged grading procedure.[4] See 421 U.S. at 790-91, 95 S.Ct. at 2014-15.
 
 
 19
 The fact that the Arizona Supreme Court has delegated to the Committee the general authority to examine applicants to determine if they are qualified to practice law and reviews the Committee's recommendations regarding admission does not alone clothe the Committee's unilateral grading policies with blanket immunity from the antitrust laws. "The national policy in favor of competition cannot be thwarted by casting such a gauzy cloak of state involvement" over actions of the Committee that were not affirmatively expressed as state policy by the Arizona court. Midcal, 445 U.S. at 106, 100 S.Ct. at 943. As the Court emphasized in Goldfarb, "(i)t is not enough that, as the ... Bar puts it, anticompetitive conduct is 'prompted' by state action; rather, anticompetitive activities must be compelled by direction of the State acting as a sovereign." 421 U.S. at 791, 95 S.Ct. at 2015. Accord, Phonetele, Inc. v. American Telephone and Telegraph Co., 664 F.2d 716, 736 (9th Cir. 1981).
 
 
 20
 The fact that the Committee was established by Supreme Court Rule and composed of members selected from the Bar by the Arizona Supreme Court is not, as defendants assert, dispositive in itself of the state-action question.[5] Although the defendants in the United States Supreme Court's state-action decisions were public bodies, or subdivisions of the state, that did not end the Court's analysis. The Court still looked to see whether the challenged restraints were clearly articulated and affirmatively expressed as state policy and were actively supervised by the state acting as sovereign. Thus, for instance, it was not dispositive that the restraints challenged in Parker, Orrin W. Fox, and Midcal were enforced, respectively, by a state commission, a state board, and a state department. 317 U.S. at 344, 63 S.Ct. at 310; 439 U.S. at 103, 99 S.Ct. at 408; 445 U.S. at 100, 100 S.Ct. at 940. In City of Lafayette, 435 U.S. at 408, 98 S.Ct. at 1134, a plurality of the Court expressly rejected the argument that the state-action exemption extends to "all governmental entities, whether state agencies or subdivisions of a State ... simply by reason of their status as such." This position has since been adopted by a majority of the Court. See City of Boulder, --- U.S. at ----, 102 S.Ct. at 842.
 
 
 21
 The question remains whether the challenged restraint allegedly fashioned by the Committee was sufficiently "articulated" and "supervised" by the Arizona Supreme Court. Standing alone, the fact that the court established the Committee and selected its members does not affect the reasoning underlying our conclusion that the challenged grading procedure was not clearly articulated and affirmatively expressed as state policy, Midcal 's first requirement.
 
 
 22
 Effective January 15, 1974, 45 days before the examination Ronwin failed, the Arizona Supreme Court adopted Rule 28(c)(VII)(B) which requires the Committee to file its proposed grading formula with the Supreme Court at least 30 days before each examination. This review procedure was not brought to the attention of the district court either in the pleadings or in the papers pertaining to the motion to dismiss; nor did the parties mention it in their briefs or arguments to this court.
 
 
 23
 Defendants contend for the first time on rehearing that the Committee's grading formula "was submitted to the Court, reviewed by the Court, and accepted by the Court." In response, Ronwin has tendered to this court what purports to be the letter the Committee filed with the Supreme Court on February 8, 1974 pursuant to Rule 28(c)(VII)(B). If, as Ronwin alleges, the Committee scored the examination to admit a pre-determined number of applicants, the letter does not so advise the court. Accordingly, if the letter presented to us constitutes the submission to the Supreme Court, it cannot be the basis for a clearly articulated and affirmatively expressed state policy. Although dismissal might have been proper if the facts were as defendants now argue for the first time on rehearing, those facts were never brought to the district court's attention. Dismissal was therefore improper on the basis of the information before the district court.
 
 
 24
 Our resolution of the state-action issue is not inconsistent with this court's prior decisions in Hackin v. Lockwood, 361 F.2d 499 (9th Cir. 1966); Chaney v. State Bar of California, 386 F.2d 962 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968); and Brown v. Board of Bar Examiners, 623 F.2d 605 (9th Cir. 1980). Those decisions do not support the contention that bar grading procedures are always shielded by state-action immunity, that such procedures may be challenged only on constitutional grounds, or that the Arizona Supreme Court was the proper defendant in this case. Those cases did not involve antitrust challenges to bar grading procedures. The plaintiffs in all three cases based their claims on alleged violations of their individual constitutional rights.[6]
 
 
 25
 The national policy in favor of competition, Midcal, 445 U.S. at 106, 100 S.Ct. at 943, should not be thwarted absent a clear articulation by the Arizona Supreme Court that it had adopted the alleged grading policy. Absent such a declaration, Ronwin should not have been denied the opportunity to prove that the grading policy was designed to limit competition among Arizona attorneys, as opposed to being designed to ensure that attorneys had the necessary qualifications. Thus, Ronwin's action should not have been dismissed on the ground that the defendants enjoy absolute state-action immunity.
 
 
 26
 B. Subject Matter Jurisdiction-Interstate Commerce
 
 
 27
 The Sherman Act's requirement of interstate commerce, 15 U.S.C. § 1, is jurisdictional. See Western Waste Service Systems v. Universal Waste Control, 616 F.2d 1094, 1097 (9th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980); see generally McLain v. Real Estate Board, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). The district court evidently found that the alleged restraint did not affect interstate commerce so as to invoke jurisdiction under the Sherman Act. Defendants contend that the jurisdictional requirement of the Sherman Act was not satisfied by Ronwin's complaint because bar admission is a purely local matter. Ronwin responds that the services of Arizona lawyers are required by people living outside Arizona. The price paid by these out-of-state clients for legal services performed by Arizona lawyers is, according to Ronwin, higher than it would be if the number of Arizona lawyers had not been artificially restricted.
 
 
 28
 In order to establish jurisdiction under the antitrust laws, a plaintiff must establish that the defendant's activity either (1) is itself in commerce or (2) "has an effect on some other appreciable activity demonstrably in interstate commerce." McLain, 444 U.S. at 242, 100 S.Ct. at 509 (emphasis added). Because of the past confusion surrounding these tests, we will consider Ronwin's allegations of interstate commerce under both the "in commerce" and the "effect on commerce" tests. See Bain v. Henderson, 621 F.2d 959, 960 n.1 (9th Cir. 1980).
 
 
 29
 (1) The "in commerce" test : The most applicable Supreme Court decision applying the "in commerce" test is Goldfarb v. Virginia State Bar, 421 U.S. at 783-86, 95 S.Ct. at 2011-12. In Goldfarb, plaintiffs alleged that the Virginia State Bar was fixing the prices charged by lawyers handling real estate transactions. In upholding jurisdiction, the Court noted that the real estate transactions that require legal services are frequently interstate transactions. 421 U.S. at 783-84, 95 S.Ct. at 2011-12. The Court reasoned that any restraint on those services therefore had a substantial effect on interstate commerce. Id. at 785, 95 S.Ct. at 2012.
 
 
 30
 Ronwin did not specifically plead which interstate transactions require legal services. See Bain, 621 F.2d at 961. Nor did he indicate how substantial an effect on interstate commerce results from restricting the number of lawyers practicing in Arizona. It is not inconceivable, however, that he could establish that legal services constitute an indispensable and inseparable component of certain interstate transactions. Therefore, the district court erred in dismissing the complaint for that reason at this stage of the proceedings. See McLain, 444 U.S. at 246, 100 S.Ct. at 511 (a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief).
 
 
 31
 (2) The "effect on commerce" test : In McLain, plaintiffs charged that various New Orleans-based real estate brokers were engaged in a price-fixing conspiracy. The Court held that plaintiffs had alleged facts sufficient to show that defendants' conduct affected interstate commerce.[7] McLain, 444 U.S. at 245, 100 S.Ct. at 510. Specifically, the Court noted indications in the record that: (1) "an appreciable amount of commerce (was) involved in the financing of residential property in the Greater New Orleans area" and the commerce involved various interstate institutions, id. at 245, 100 S.Ct. at 510; and (2) the activities of the real estate brokers, by affecting the terms and frequency of local real estate transactions, could have a "not insubstantial effect on interstate commerce." Id. at 246, 100 S.Ct. at 511.
 
 
 32
 Ronwin did not allege either that there are an appreciable number of interstate transactions taking place in Arizona that require legal services or that limiting the number of lawyers has a not insubstantial effect on the number or size of these transactions. However, as is also true under the "in commerce" test, it is not inconceivable that Ronwin could establish jurisdiction under the "effect on commerce" test. See, e.g., McLain, 444 U.S. at 245-47, 100 S.Ct. at 510-11; Western Waste Service, 616 F.2d at 1097-99. Therefore, on remand, the district court should give Ronwin the opportunity to prove that his complaint meets the jurisdictional requirements under either of these tests.
 
 C. Standing
 
 33
 In order to have standing to maintain a private antitrust action, a party must allege injury to the party's business or property occurring by reason of the alleged antitrust violation. 15 U.S.C. § 15; Solinger v. A&M Records, Inc., 586 F.2d 1304, 1309 (9th Cir. 1978), cert. denied, 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979). Defendants contend that even if they committed an antitrust violation, the violation did not cause Ronwin injury because he was subsequently found mentally unfit to engage in the practice of law. Thus, according to defendants, even if Ronwin had passed the exam, he would not have been admitted to practice in Arizona.
 
 
 34
 The flaw in the defendants' argument is that Ronwin was not found mentally unfit to practice law by the Arizona Supreme Court until July of 1976, twenty-seven months after Ronwin's exam results were released.[8] If Ronwin had passed the exam, he arguably would have been able to practice law until he was found, by final decision, to be mentally unfit. Because defendants' alleged illegal restraint precluded Ronwin from practicing law in Arizona for an appreciable period of time, Ronwin has sufficiently alleged that he was injured by reason of an unlawful practice. See Kapp v. National Football League, 586 F.2d 644, 648 (9th Cir. 1978), cert. denied, 441 U.S. 907, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979). Cf. Solinger, 586 F.2d at 1311 (prospective purchaser of company has standing to sue companies that allegedly foreclosed his ability to enter market). Although his allegations of damages suffice to confer standing, Ronwin will still have to prove that defendants' actions caused him actual damages in order to recover.[9]
 
 III
 THE RECUSAL QUESTION
 
 35
 Ronwin appeals the denial of his recusal motion. The district judge was also presiding at that time over other actions in which Ronwin was a party. Ronwin set forth, in various affidavits and motions, facts which he contends indicated that the judge was biased and prejudiced against him. He contends that the judge was therefore required to recuse himself pursuant to 28 U.S.C. §§ 144 and 455.[10]
 
 
 36
 The test for disqualification is the same under sections 144 and 455(b)(1). United States v. Sibla, 624 F.2d 864, 867 (9th Cir. 1980). That test is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Winston, 613 F.2d 221, 222 (9th Cir. 1980). In evaluating a judge's impartiality, the bias or prejudice "must stem from an extrajudicial source." Azhocar, 581 F.2d at 739 (emphasis in original). We review the denial of a recusal motion for abuse of discretion. Sibla, 624 F.2d at 868-69.
 
 
 37
 Ronwin's specific allegations of bias or prejudice involve judicial acts which the district judge either performed or failed to perform while presiding over the other actions in which Ronwin was a party. None of these actions involved extra-judicial acts which would indicate, on their face, prejudice or bias. Adverse rulings by themselves do not constitute the requisite bias or prejudice. Azhocar, 581 F.2d at 738-39. Ronwin also contends that the judge was prejudiced against him because the judge was a defendant in an action brought by Ronwin. However, "(a) judge is not disqualified merely because a litigant sues or threatens to sue him." United States v. Grismore, 564 F.2d 929, 933 (10th Cir. 1977), cert. denied, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Such an easy method for obtaining disqualification should not be encouraged or allowed.
 
 
 38
 Finally, Ronwin contends that the judge's alleged participation in ex parte communications with defense counsel indicated the judge's prejudice. Although a judge is generally required to accept the truth of the factual assertions in an Affidavit of Bias filed pursuant to 28 U.S.C. § 144, Azhocar, 581 F.2d at 739, Ronwin's allegation of ex parte communications relates to facts that were peculiarly within the judge's knowledge.[11] Given the judge's emphatic denial of Ronwin's allegations, and Ronwin's failure to show how such alleged communications indicated the judge's prejudice, the judge did not abuse his discretion by denying Ronwin's motion.
 
 IV
 CONCLUSION
 
 39
 We conclude that the district court did not abuse its discretion in denying the motion for recusal. We also conclude, however, that the court erred in dismissing the action as to the individual Committee members, and remand for further proceedings consistent with this opinion.[12]
 
 
 40
 AFFIRMED in part; REVERSED in part, and REMANDED.
 
 FERGUSON, Circuit Judge, dissenting:
 
 41
 It is now the law in this circuit that a person who has been judicially determined to be mentally unable to engage in the practice of law in the State of Arizona may still maintain a $1,200,000 damage action under the federal antitrust laws against the Committee on Examinations and Admissions of the Arizona Supreme Court and the Committee's members[1] for failure to give him a passing grade on the state bar examination!
 
 
 42
 Precedents in this circuit and the Supreme Court mandate that when the grading procedures of the board of bar examiners are challenged, such a challenge must be brought against the state supreme court as defendant. Moreover, because the action of the state supreme court is state action within the Parker exception, that action is immune to an antitrust attack. Further, the impact of the actions alleged by plaintiff are insubstantial and thus outside the antitrust laws. Consequently, I dissent from the majority's conclusion that the antitrust laws apply to this bar examination matter.
 
 
 43
 I. CHALLENGE TO DENIAL OF BAR ADMISSION.
 
 A. Proper Defendant
 
 44
 A state's discretion over rules for admission to legal practice is vested in the judiciary, or the legislature. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). In Hackin v. Lockwood, 361 F.2d 499 (9th Cir.), cert. denied, 385 U.S. 960, 87 S.Ct. 396, 17 L.Ed.2d 305 (1966), we held that the power to grant or deny admission to the bar is vested in the Arizona Supreme Court. Hence, the State Committee on Examinations and Admissions was not a proper defendant because it was merely a committee of the Arizona Supreme Court with powers delegated by the court. Id. at 500.
 
 
 45
 In Hackin, plaintiff, the graduate of an unaccredited law school, could not take the bar because a state bar rule allowed only graduates of accredited law schools to take the bar. Plaintiff sued the justices of the Arizona Supreme Court, the State Bar of Arizona, and the Committee on Examinations and Admissions. In holding that the state bar and the Committee on Examinations and Admissions were improper defendants, the court explained:
 
 
 46
 The State Bar of Arizona is not an appropriate party to the suit because it cannot promulgate or change the rules governing admission to practice in Arizona. Its Board of Governors can suggest rules to the Arizona Supreme Court, and can enforce them, but only with the approval of the Arizona Supreme Court....
 
 
 47
 In the original complaint, but not in the amended complaint, appellant names as a defendant the "Committee on Examinations and Admissions," presumably of the State Bar. This is not a committee of the State Bar, but a committee named by the Supreme Court of Arizona, made up of members of the Arizona State Bar, Rule 28(a). Thus we find the power to grant or deny admission is vested solely in the Arizona Supreme Court....
 
 
 48
 361 F.2d at 499 (9th Cir. 1966).
 
 
 49
 Considering a similar admissions procedure, the court reiterated this conclusion in Chaney v. State Bar of California, 386 F.2d 962 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968). In that case, we held that the refusal of the State Bar Committee to certify an applicant was not a terminative step in the admissions process. Because final decision is vested in the state supreme court, the committee's decision not to admit had no "fixative" status until the court approved or rejected the Committee's recommendation. Id. at 966. Once a decision is final, the supreme court is the proper defendant when a party complains about examination procedures. Thus, the Committee cannot be a party because it is merely an arm of the state supreme court "for the purposes of assisting in matters of admission ...," which matters remain ultimately in the court. Id. If the plaintiff is deprived of a right, it is the state supreme court, not the Committee on Examinations and Admissions, that is the source of the deprivation.
 
 
 50
 These decisions were reaffirmed in Brown v. Board of Bar Examiners, 623 F.2d 605 (9th Cir. 1980). The Bar Examiners of Nevada were found to be an improper party for the reason articulated in Hackin and reemphasized in Chaney,[2] id. at 608. See also Whitfield v. Illinois Board of Law Examiners, 504 F.2d 474 (7th Cir. 1974) (reaching similar conclusion).
 
 
 51
 The harm suffered by the plaintiff, if any, is that resulting from the Arizona Supreme Court's refusal to admit him to the bar. Accordingly, Ronwin cannot sue the Committee on Examinations and Admissions of the Arizona Supreme Court.
 
 B. Limitations on Challenges
 
 52
 Court review of state procedures for admission and testing is guided by the rational basis standard. Chaney v. State Bar, supra, at 964; Tyler v. Vickery, 517 F.2d 1089, 1099 (5th Cir. 1975), cert. denied, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976).[3] While the discretion granted to states and bar examiners is broad, the opportunity to practice law is protected by the due process and equal protection clauses of the fourteenth amendment. Willner v. Committee on Character & Fitness, 373 U.S. 96, 102, 83 S.Ct. 1175, 1179, 10 L.Ed.2d 224 (1963). Brown v. Board of Bar Examiners, supra, established a definite procedure for challenging admission practices. Noting that admission procedures are purely a matter of local concern, Brown stated, "The only constraints on the states' exclusive jurisdiction are constitutional in nature...." 623 F.2d at 609.
 
 
 53
 Brown outlined the alternatives available to an unsuccessful applicant:
 
 
 54
 Since federal courts are granted jurisdiction under 28 U.S.C. § 1343 to vindicate constitutional rights, an issue arises as to the extent of a federal court's authority to participate in what is primarily a state concern. A dichotomy has developed between two kinds of constitutional attack which might be pursued by an unsuccessful bar applicant: "The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission." Doe v. Pringle, 550 F.2d 596, 597 (10th Cir. 1976), cert. denied, 431 U.S. 916, 97 S.Ct. 2197, 53 L.Ed.2d 227 (1977).
 
 
 55
 In the first type of attack, federal district courts may assert jurisdiction under § 1343 to ensure that generally applicable rules of procedures do not impinge on constitutionally protected rights. Federal courts have frequently entertained challenges to rules controlling admission to the bar, and have almost without exception sustained the validity of such rules. (Citations omitted).
 
 
 56
 On the other hand, a state court's decision on an individual application may not be disturbed in an original suit in federal district court. "(O)rders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court ...." Mackay v. Nesbett, 412 F.2d 846 (9th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). In exercising its judgment on an individual petition, a state supreme court performs a judicial act, In re Summers, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945), reviewable in the Supreme Court. See Schware v. Board of Bar Examiners, supra, 353 U.S. at 238, 77 S.Ct. at 755; Konigsberg v. State Bar of California, 353 U.S. 252, 258, 77 S.Ct. 722, 725, 1 L.Ed.2d 810 (1957). A federal district court, in contrast, does not sit as an appellate court and therefore lacks jurisdiction to review state court actions denying admission to the bar, even though the denial allegedly involves deprivation of constitutional rights.
 
 
 57
 Brown, supra, at 609-10 (citations omitted). The plaintiff in Brown attempted the only viable challenge to state bar admission procedures-a constitutional challenge. Brown denied jurisdiction because the plaintiff presented a claim of individual constitutional deprivation and the prayer for relief sought individual redress including monetary damages. Hence, the court found that the claim was not cognizable in district court. Brown, supra, at 611.
 
 C. The Majority Opinion
 
 58
 The opinion disregards the tradition of deference to state discretion in admission procedures. Because such deference has never existed toward the state's ability to regulate fees, the majority's reliance on Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), is misplaced. Further, the opinion creates an antitrust cause of action where the only challenge that might be appropriate is a constitutional one. Brown, 623 F.2d at 609. Finally, Brown held that a federal district court does not have jurisdiction over a claim against bar examiners because the state court is the real party in interest in admission cases. In addition, jurisdiction is allowed only where the suit alleges arbitrary and capricious procedures violative of due process. 623 F.2d at 610. However, the qualifications for admission in Arizona are "nearly identical" to those unsuccessfully challenged in Brown. Id. at 610, n.9. Because Ronwin has sued the wrong defendant and because his suit raises no constitutional challenge to admission procedures, binding precedent requires that the district court's dismissal be affirmed.
 
 
 59
 II. THE ANTITRUST EXEMPTION.
 
 
 60
 The Parker antitrust exemption is grounded in our federal system:
 
 
 61
 In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.
 
 
 62
 Parker v. Brown, 317 U.S. 341, 351, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). The unfortunate effect of the majority opinion is to attribute to the Sherman Act a congressional intent to limit a state's control over bar admissions.
 
 
 63
 The proposition for which National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), stands, namely, that federal interference should not extend to essential state functions, is applicable to antitrust cases, in which Congress exercises its powers under the commerce clause. See Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 423, 98 S.Ct. 1123, 1142, 55 L.Ed.2d 364 (1977) (Burger, C. J., concurring in Part I of the Court's opinion and in the judgment); id. at 430, 98 S.Ct. at 1145 (Stewart, J., dissenting). I would think that regulation of bar admissions is an "integral operation in the area of traditional government functions." See id. at 424, 98 S.Ct. at 1142 (Burger, C. J.). For that very reason, the Arizona Supreme Court oversees bar admissions and delegates authority to its agent. The state must have regulatory authority to examine the fitness and competence of bar applicants. If the state's agents abuse their authority, the proper remedy is a constitutional attack, not an antitrust attack that will undermine the authority that states qua states have to regulate bar admissions.
 
 
 64
 The majority applies erroneous standards to determine whether an agency of the state, that is, the Committee on Examinations and Admissions of the Arizona Supreme Court, is exempt from antitrust laws. The majority incorrectly applies a test of compulsion by asking whether the action of the Committee was required by the state supreme court. The majority answers: "Like the defendants in Goldfarb, the defendants here have no statute or Supreme Court Rule to point to as directly requiring the challenged grading procedure." Maj. op., ante, at 696 (emphasis added).
 
 
 65
 However, the test of compulsion in Goldfarb, supra, applied only to private conduct of the county bar association and to the State Bar's joinder in that private conduct. In Goldfarb, the private county bar association adopted a fee schedule and the State Bar, "by providing that deviation from County Bar minimum fees may lead to disciplinary action ... voluntarily joined in what is essentially a private anticompetitive activity." Goldfarb, supra, at 791-92, 95 S.Ct. at 2015-16.
 
 
 66
 In analyzing the application of the compulsion test to the antitrust immunity of public and private defendants, Professor Areeda has wisely remarked:
 
 
 67
 The Supreme Court and lower courts have not applied the compulsion language literally. In Midcal, 445 U.S. 97 (100 S.Ct. 937, 63 L.Ed.2d 233) (1980), the Court defined the criteria for immunity not in terms of compulsion but in terms of supervision and articulated state policy; the emphasis on supervision implies public scrutiny, deliberation and review, but not command. Id. at 105-06 (100 S.Ct. at 943-44). And in Parker, 317 U.S. at 346-47 (63 S.Ct. at 311-12), the anticompetitive output limitations ultimately enforced by public officials originated in proposals from the beneficiaries.
 
 
 68
 Lower courts employ the rhetoric of compulsion found in Goldfarb and Cantor, but immunize private action that is essential to a state regulatory scheme....
 
 
 69
 Compulsion is not necessary in cases of public defendants. Immunity for decisions of subordinate agencies or officials cannot depend on an explicit command from the legislature; delegation of governmental powers necessarily includes the discretion to make decisions not compelled by the legislature.
 
 
 70
 Areeda, Antitrust Immunity for "State Action" After Lafayette, 95 Harv.L.Rev. 435, 438 n.19, 445 n.49 (1981).
 
 
 71
 In the instant case, the defendants are the committee and its members, a state agency and officials acting within their general ambit of authority granted by the Arizona Supreme Court. Since the activity of public defendants is involved, the proper test for antitrust immunity is the one found in City of Lafayette, supra. The plurality in Lafayette concluded that "the Parker doctrine exempts only anticompetitive conduct engaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation." Id. at 413, 98 S.Ct. at 1137. An adequate mandate for state anticompetitive activity exists when it is found, from the authority given a governmental entity to operate in a particular area, that "the kind of action complained of" was contemplated. Id. at 415, 98 S.Ct. at 1138.
 
 
 72
 Thus, the proper test to apply to the action of the Committee is one of state authorization, not one of compulsion. In deciding whether the action of the Committee was authorized, it is necessary to consider whether the Committee acted "pursuant to state policy to displace competition with regulation," City of Lafayette, supra, at 413, 98 S.Ct. at 1137, and whether that policy was "clearly articulated and affirmatively expressed." Community Communications Co., Inc. v. City of Boulder, --- U.S. ----, ----, 102 S.Ct. 835, 840, 70 L.Ed.2d 810 (1982).[4]
 
 
 73
 There can be no doubt that it was the policy of the Arizona Supreme Court-and, of course, the policy of the state's highest court is that of the state, see Bates v. State of Arizona, 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977)-to displace competition with regulation. Indeed, any effort to limit admission to the bar will limit the open competition of the market place. As part of the regulatory scheme, the supreme court adopted a rule directing its Committee to "examine applicants and recommend to this court for admission to practice applicants who are found by the committee to have the necessary qualifications." Rule 28(a) (1970). Surely this authorization by the Arizona Supreme Court "contemplates" that its Committee would engage in the "kind of action complained of" by plaintiff, namely, the establishment of bar admission standards and grading procedures.
 
 
 74
 The majority relies on Goldfarb, rather than Bates, supra, as analogous to the instant case. Though neither Goldfarb nor Bates is an exact replica of the case at hand, Bates is more directly on point. Goldfarb would be more relevant if, in the instant case, the Arizona Supreme Court had rejected the Committee's procedures; the state supreme court in Goldfarb had warned the state bar against enforcing the challenged fee schedules. Goldfarb, supra, at 789, 95 S.Ct. at 2014. In contrast, the Arizona Supreme Court approved the procedures challenged here by accepting recommendations for admission based on those procedures.[5] This implied validation of the board's grading system renders Bates the more direct and proper analogy.
 
 
 75
 In Bates, the activity of the state bar was to enforce a prohibition against advertising. There, the state bar was immune because the supreme court had promulgated the rule. The alleged anticompetitive result was to monopolize. In the instant case, the challenged activity is the grading of examinations on a curve. The state supreme court has entrusted the grading of examinations to the state bar. The alleged anticompetitive result is artificially to limit the number of attorneys and thereby to monopolize. The opinion erroneously subjects the state bar to antitrust laws by focusing on the alleged result and ignoring the immunity issue decided in Bates.
 
 
 76
 The majority has relied on two cases in which no antitrust immunity was found for cities charged with antitrust violations. City of Lafayette, supra; City of Boulder, supra. Those cases are inapposite, as they involve actions by cities. Such action deserves close scrutiny, as there is justifiable concern that a city may advance local, parochial interests, rather than the interests of the people of a state. The federalist compromise, of course, only provides antitrust immunity where the state's interests are concerned. In the instant case, however, an arm of the state supreme court, not a city, is doing the regulating. Moreover, the regulation concerns a matter of statewide interest-the qualifications of admittees to the bar-not a matter of local concern. The regulation of admission to the bar is at the core of the state's power to protect the public.
 
 
 77
 City of Boulder, supra, actually lends support to the position that antitrust immunity should apply in the case at hand. In explaining why antitrust immunity should not be conferred on a city exercising home rule powers granted by the legislature, the Court in City of Boulder stated:
 
 
 78
 (P)lainly the requirement of "clear articulation and affirmative expression" is not satisfied when the State's position is one of mere neutrality respecting the municipal actions challenged as anticompetitive. A State that allows its municipalities to do as they please can hardly be said to have "contemplated" the specific anticompetitive actions for which municipal liability is sought. Nor can those actions be truly described as "comprehended within the powers granted," since the term, "granted," necessarily implies an affirmative addressing of the subject by the State.
 
 
 79
 City of Boulder, supra, --- U.S. at ----, 102 S.Ct. at 843 (emphasis in original). By no stretch of the imagination has the Arizona Supreme Court taken a position of "neutrality" allowing the Committee to do as it pleases. To the contrary, the Arizona Supreme Court has affirmatively addressed the subject matter of this suit by granting to the Committee the power to examine applicants and to recommend for admission to the bar those who are found to have the necessary qualifications.[6]
 
 
 80
 I am concerned that the majority, by holding that the anticompetitive action in this case was not authorized by the state and is not shielded by the state antitrust immunity, has opened wide the door to antitrust scrutiny of virtually all acts by agents and officials of the state who carry out policies of statewide concern. The foreseeable consequence of multiplication of antitrust actions accompanied by the threat of treble damages will be timorous decisionmaking by state officials entrusted with the public interest. The day when every act of an agent or official of the state who has been delegated power pursuant to state policy becomes subject to scrutiny for violation of the antitrust laws will be the day that our federalism has become gravely weakened.
 
 
 81
 III. ALLEGED IMPACT ON COMMERCE.
 
 
 82
 In order to prevail in an antitrust suit, a party must demonstrate an effect on commerce which is "more than trivial" in the relevant market. Gough v. Rossmore Corp., 585 F.2d 381, 389 (9th Cir. 1978), cert. denied, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). Plaintiff's complaint neither identifies a relevant market nor alleges a substantial impact on such a market. A court should give a party the opportunity to demonstrate the elements of his case if his claim presents the possibility that he may prove substantial impact. However, on the facts of this case, plaintiff could not demonstrate more than the trivial impact of a curved grading system. The ability of applicants to reapply permits them to remain within the potential commerce stream.
 
 
 83
 In addition, the opinion relies on McLain v. Real Estate Board, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), for the proposition that Ronwin could "conceivably" demonstrate impact on the relevant market. The relevant market in this case, however, while not defined before the district court, is a broad and diffuse market that is not analogous to the well-defined property market in New Orleans with a specific percentage of out-of-state contractors. Without more, the conclusion of a conceivable impact in Ronwin does not flow from the facts of McLain.
 
 CONCLUSION
 
 84
 For the foregoing reasons, I dissent.
 
 
 
 *
 The Honorable Terry J. Hatter, Jr., United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Although the Committee is appointed by the Arizona Supreme Court from a list of nominees chosen by the Bar's Board of Governors, it is not, as such, a committee of the State Bar. Because no specific allegations of wrongdoing have been made against the Bar, the dismissal for failure to state a claim was proper as to the Bar. For the same reason, we affirm the dismissal as to the spouses of the individual committee members
 
 
 [2]
 Ronwin applied to retake the bar examination in July, 1974, but was denied permission because the Committee declined to certify that he was "mentally and physically able to engage in active and continuous practice of law." See Ariz.Sup.Ct.R. 28(c)(IV)(5). A special committee conducted a formal hearing regarding the allegations of mental unfitness under Ariz.Sup.Ct.R. 28(c)(XII) (D). After holding a hearing, this special committee declined to find Ronwin mentally fit to practice law. The finding of unfitness was affirmed by the Arizona Supreme Court. Application of Ronwin, 113 Ariz. 357, 555 P.2d 315 (1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1178, 51 L.Ed.2d 583 (1977)
 
 
 [3]
 On remand, however, it may be necessary to determine the manner in which the 1974 examination was graded. Specifically, the court should determine whether the examination was graded as Ronwin alleges, or was graded on a different basis, such as a "scaled" formula, designed to equalize the difficulty of the exam over various years with the pass-fail determination being based on individual merit rather than numerical quota
 
 
 [4]
 The challenged policies in Benson v. Arizona State Board of Dental Examiners, 673 F.2d 272, 275-76 (9th Cir. 1982) (as amended), in contrast to this case, were explicitly mandated by statute
 
 
 [5]
 As in City of Boulder and City of Lafayette, "(t)his case's preliminary posture makes it unnecessary for us to consider other issues regarding the applicability of the antitrust laws in the context of suits by private litigants against government defendants ... (or to) confront the issue of remedies appropriate against (public) officials." City of Boulder, --- U.S. at ---- n.20, 102 S.Ct. at 843 n.20. Accord, City of Lafayette, 435 U.S. at 401-02, 98 S.Ct. at 1130-31
 
 
 [6]
 The statement in Brown that "the only constraints on the states' exclusive jurisdiction (over bar admission matters) are constitutional in nature ...," 623 F.2d at 609, refers to § 1343 actions like those at issue in Brown, Hackin, and Chaney because, as the Brown court notes in the very next sentence: "federal courts are granted jurisdiction under 28 U.S.C. § 1343 to vindicate (only) constitutional rights." This jurisdictional limitation stems from the express language of § 1343, not from the fact that the plaintiff was challenging a bar admission policy. One need look no farther than Goldfarb, where the Court held that the minimum-fee schedule enforced by the state bar violated § 1 of the Sherman Act, to see that Ronwin's complaint established subject-matter jurisdiction under federal antitrust laws
 Similarly, a careful reading of the three decisions reveals that they do not hold that a state supreme court is the only proper defendant in challenges to bar grading procedures. As the court explained in Brown, the state supreme court is the proper party when it has promulgated the specific challenged rule. 623 F.2d at 608 n.6.
 In Hackin, as the Brown court noted, the court emphasized that the admission rule at issue, barring graduates of unaccredited law schools from taking the bar exam, was directly promulgated and enforced by the state supreme court. 361 F.2d at 500-01. In Chaney, the court's discussion clearly concerns finality and the nature of the plaintiff's claim, and has no relevance to the issues of state action or proper parties. See 386 F.2d at 966-67. It should also be noted that the Chaney court discusses the plaintiff's restraint of trade contention (similar to Ronwin's claim) at length, and rejects it on factual rather than jurisdictional grounds. Id. at 965. Thus, these decisions offer no support for the contention that there is a blanket rule making state supreme courts the only proper defendants in all bar admissions cases.
 
 
 [7]
 The Court specifically stated that a party need only show that a defendant's general business, as opposed to the alleged illegal conduct, affected interstate commerce in order to meet the jurisdictional requirement. McLain, 444 U.S. at 242, 100 S.Ct. at 509
 
 
 [8]
 Although the Committee on Examinations and Admissions declined to certify that Ronwin was "mentally fit" to practice law when he applied to retake the bar exam in July, 1974, and the special committee appointed by the Arizona Supreme Court upheld that determination on January 21, 1975, it was not until July, 1976 that the Arizona Supreme Court affirmed the finding. Application of Ronwin, 113 Ariz. 357, 555 P.2d 315 (1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1178, 51 L.Ed.2d 583 (1977). Defendants do not contend either that Ronwin would have been denied admission in 1974 because of his alleged unfitness to practice had he passed the exam or that he would not have been allowed to practice law pending the Arizona court's decision on the matter. It would be inappropriate for this court to speculate on the matter
 
 
 [9]
 Assuming that Ronwin is able to clear the various hurdles still before him, it may be necessary to determine whether he would have passed the bar examination if graded on a proper basis. If the 1974 bar exam may still be impartially regraded to ascertain whether Ronwin would have received a passing grade, but for the alleged improper method of restricting bar admission, the district court may so order and supervise such a procedure for the sole purpose of determining whether Ronwin has been damaged. If the court decides that such a remedy is no longer feasible under the circumstances of this case, it would be justified in presuming that he would have passed for the purpose of ascertaining damages, if any. The amount of damages would be limited to Ronwin's loss of earnings, between April, 1974 when he would have been admitted to the Bar, and July, 1976, when the Arizona Supreme Court found him unfit to practice law. See Murphy Tugboat Co. v. Crowley, 658 F.2d 1256, 1260 (9th Cir. 1981) (special solicitude for proof of damages when defendant's conduct has been a factor in speculative nature of damages), cert. denied, --- U.S. ----, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982)
 
 
 [10]
 28 U.S.C. § 144 provides:
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 Under this section, the district judge must accept the truth of the factual assertions in the affidavit and determine only whether the affidavit is legally sufficient. See United States v. Azhocar, 581 F.2d 735, 739 (9th Cir. 1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).
 28 U.S.C. § 455 provides, in part, that:
 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 (b) He shall also disqualify himself in the following circumstances:
 (1) Where he has a personal bias or prejudice concerning a party ....
 
 
 [11]
 Ronwin's allegation of ex parte communication between the judge and defense counsel was based on the fact that the counsel, in setting a hearing date on defendants' motion to dismiss, knew when the judge would be in Phoenix. According to Ronwin, counsel could only have obtained that knowledge through ex parte communications with the judge. Counsel explained, however, that he knew the judge would be in Phoenix on the day he suggested for a hearing because he had received an order from the court in another case assigned to the judge setting the same date for a hearing in the other case
 
 
 [12]
 We note that many of the remaining issues may be suitable for resolution by means of summary judgment
 
 
 [1]
 The majority has dismissed spouses of the committee members for the perplexing reason that no specific allegations of wrongdoing have been made against the spouses. Maj. op., note 1, ante. However, in Arizona plaintiffs join spouses as defendants to reach their community property, not because the spouses are wrongdoers. A.R.S. § 25-215 requires that a cause of action based upon a community obligation be brought against both husband and wife. Eng v. Stein, 123 Ariz. 343, 599 P.2d 796 (1979). A community obligation is incurred when, for example, a husband's tort is committed in furtherance of the community's interest. Howe v. Haught, 11 Ariz.App. 98, 462 P.2d 395 (1969). In fact, plaintiff pleaded, "The male Defendants all acted on their own behalves and on behalf of their respective marital communities." Whether defendants actually acted on behalf of their marital communities is a question that the district court did not address and that the majority does not address. Since the case is remanded, resolution of this material issue should have been left to the district court. That plaintiff did not specifically allege that defendants' spouses are wrongdoers is wholly immaterial
 The majority's expansive interpretation of antitrust law contrasts nicely with its restrictive view of plaintiff's remedies. The effect of dismissing defendants' spouses from the action is that now plaintiff may recover only from the separate property of defendants. See Eng v. Stein, supra, 123 Ariz. at 346, 599 P.2d at 799.
 
 
 [2]
 In Brown, a graduate of an unaccredited law school sued the Nevada Supreme Court, State Bar, and Board of Bar Examiners to allow her to sit for the bar. The district court dismissed the State Bar and the Board of Bar Examiners as improper parties under Hackin, yet issued an injunction against them. 623 F.2d at 608. In allowing the bar and the board to appeal, the court of appeals explained:
 We see no logic in the district court's novel rulings which currently dismissed appellants and yet granted specific relief against them. Whatever the rationale, however, appellants should not be denied appellate review of orders by which they are aggrieved.
 Id. Clearly, the court allowed the two parties to appeal because they were aggrieved. In dictum, the court said that Hackin, involving a challenge to the validity of a state supreme court rule governing admission to the bar, did not apply to make the state bar and the board improper defendants, since these were the only parties who could "physically comply" with an injunction requiring the defendants to let the plaintiff sit for the bar. Id. at 608 & 608 n.6. Even assuming the correctness of that dictum, it has no application to this case. Ronwin complains not of the failure of the state bar to seat him for the exam-he failed it-but of the failure of the supreme court to admit him. Admission to the bar is within the province of the supreme court, not the state bar, nor the committee.
 
 
 [3]
 A variety of discretionary practices have been sanctioned by the courts. Statutes permitting admission without examination are valid. Shenfield v. Prather, 387 F.Supp. 676 (N.D.Miss.1974). A state may validly require an applicant to pass an examination in essay form. Chaney v. State Bar, supra. A state may allow state graduates to waive examination without denying equal protection to other applicants. Huffman v. Montana Supreme Court, 372 F.Supp. 1175 (D.C.Mont.), aff'd, 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974). A board of bar examiners may validly meet to review borderline failure after all scores are tabulated. Hooban v. Board of Governors of Washington State Bar Ass'n, 85 Wash.2d 774, 539 P.2d 686, app. dism'd, 424 U.S. 902, 96 S.Ct. 1092, 47 L.Ed.2d 306 (1976). Subjective grading by examiner is allowed. Tyler v. Vickery, supra
 
 
 [4]
 I recognize that the majority believes an additional element of the immunity test is whether the state policy is "actively supervised by the state itself." Maj. op., ante, at 696. Professor Areeda, however, observes that the Supreme Court has not yet required that governmental acts be supervised by the state. Areeda, Antitrust Immunity for "State Action" After Lafayette, 95 Harv.L.Rev. 435, 445 & 445 n.50
 The cases cited by the majority do not apply the supervision test to public defendants-and, of course, the Committee and its members are such defendants. City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978), quotes the "active supervision" language of Bates, without applying any such test. New Motor Vehicle Board of California v. Orrin W. Fox Co., 439 U.S. 96, 109, 99 S.Ct. 403, 411, 58 L.Ed.2d 361 (1978), makes no mention of an "active supervision" test. California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc., 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980), applies the test to a private defendant. Finally, Community Communications Co. v. City of Boulder, --- U.S. ---- n.14, 102 S.Ct. 841 n.14 (1982), expressly refused to reach the issue of whether active state supervision was required.
 Were the Midcal test of "active supervision" to be extended to include public defendants, I have no doubt that the test would be satisfied in the instant case by the Arizona Supreme Court's review. Ariz.Sup.Ct. Rule 28(a) (1970); Ariz.Sup.Ct. Rule 28(c)VII(B) (1974).
 The majority declares that a triable issue remains as to whether the submission made by the Committee to the supreme court pursuant to Rule 28(c) was adequate to enable the supreme court to engage in the kind of active supervision which the majority concludes is required before the state action exemption will be available.
 Supreme Court Rule 28(c), as in effect at the relevant time, required the Committee to file its grading formula with the supreme court 30 days before the bar examination. As the majority notes, it apparently did not come to the attention of the district court, nor to this court until quite recently, that this rule was in effect at the time the conduct complained of by Ronwin occurred. However, this supreme court rule has the force of law, and the court can-indeed must-consider it in deciding whether the Committee's conduct was actively supervised by the court.
 In addition to considering the effect of Rule 28(c), however, the majority has also given weight to evidence not presented to the district court, and indeed not presented to this court until long after oral argument, purporting to bear on the actual nature of the submission made pursuant to Rule 28(c). The record made by the parties in the district court contains no evidence whatsoever that would suggest any failure by the Committee to adequately inform the supreme court of its grading policies and procedures. I find it irregular for the court of appeals to go outside the record to decide an appeal from a dismissal by the district court. As a matter of due process, the parties have a right to have their appeal heard on the basis of the factual record assembled in the court below.
 
 
 [5]
 In further contrast, the defendant in the instant case is a public defendant carrying out a state policy, whereas the defendants in Goldfarb were the private county bar and the state bar joining in essentially private activity. See dissent ---- supra
 
 
 [6]
 Arizona Supreme Court Rule 28(a) (1970), which assigns to the Committee the duty of screening applicants, provides in pertinent part:
 The committee shall examine applicants and recommend to this Court for admission to practice applicants who are found by the committee to have the necessary qualifications and to fulfill the requirements prescribed by the rules of the board of governors as approved by this Court respecting examinations and admissions.... The Court will then consider the recommendations and either grant or deny admission.