**In re Michael Frank GOODWIN, Debtor.**

**Diane Catherine SEIDEL, J. Elliot McIntosh, and Michael Frank Goodwin, Appellants,**

**v.**

**Ronald L. DURKIN, Chapter 7 Trustee of Entertainment Specialties, Inc., U.S. Trustee, and Robert P. Mosier, Chapter 11 Trustee, Appellees.**

**BAP Nos. CC–95–1332–HNMe, CC–95–1409 and CC–95–1457.**

**Bankruptcy No. SA–86–06166–JR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 18, 1996.

Decided Feb. 28, 1996.

J. Elliot McIntosh, Santa Ana, CA, for appellants.

Howard S. Levine, Los Angeles, CA, for appellee, Ronald L. Durkin.

Kirk S. Rense, Newport Beach, CA, for appellee, Robert P. Mosier.

Before: HAGAN, NIELSEN [1], and MEYERS, Bankruptcy Judges.

### OPINION

HAGAN, Bankruptcy Judge:

Michael Goodwin ("Goodwin") is a chapter 11 debtor. Diane Seidel ("Seidel") is Goodwin's ex-wife, and a defendant in much of the litigation before the bankruptcy court. J. Elliot McIntosh ("McIntosh") is the attorney for Goodwin and Seidel. (Hereinafter, Goodwin, Seidel, and McIntosh will collectively be referred to as "Appellants.") Goodwin and Seidel brought a motion to recuse the bankruptcy judge for alleged bias and ex parte contacts. Goodwin and Seidel issued subpoenas in an attempt to conduct discovery on this matter. The bankruptcy judge quashed the subpoenas, granted discovery sanctions against McIntosh for issuing the subpoenas, and declined to recuse himself. The Appellants appeal. We AFFIRM.

### FACTS

#### 1. Background Facts.

This appeal arises out of a very long and heated bankruptcy case.[2] Goodwin was the majority owner of Entertainment Specialties, Inc. ("ESI"). In 1986, Goodwin filed a chapter 11 petition on behalf of ESI. ESI's bankruptcy case was converted to chapter 7 in 1988, and Ronald Durkin ("Durkin") was appointed as chapter 7 trustee.

Goodwin filed an individual chapter 11 petition in 1986. Robert Mosier ("Mosier") was appointed as a chapter 11 trustee in 1987. From 1988 to 1993, Goodwin and Seidel were out of the country, and refused to provide their address or location. (Goodwin and Seidel allege that they did provide a contact through whom they could be reached.) In 1989, Mosier obtained a default judgment against Goodwin and Seidel that Seidel's interest in a partnership known as JGA Group was property of the Goodwin bankruptcy estate. The default judgment granted Mosier authority to use JGA Group assets in accordance with the Bankruptcy Code.

In 1994, Goodwin and Seidel, together with two other persons, brought an action against Mosier and Durkin. The complaint alleged that Goodwin, Seidel, and the other two plaintiffs were participants in a pension plan that held an interest in the JGA Group. The complaint alleged that Mosier, Durkin, and others wrongfully took the assets of the JGA Group, converted those assets to cash, and then used the cash for their personal benefit. In August, 1994, the bankruptcy court dismissed with prejudice that portion of the action brought by Goodwin and Seidel.

#### 2. Procedural History and Summary of Allegations.

On November 17, 1994, Goodwin and Seidel filed an ex parte motion seeking the recusal of the bankruptcy judge. The declaration of Goodwin asserted the following reasons for recusal. The first incident involved a story related to Goodwin by William Lobel ("Lobel"), Goodwin's former attorney. Lobel told Goodwin that "the Court" (otherwise unidentified) had called Lobel after Goodwin appeared in court on May 23, 1993. The court stated that it was concerned that Lobel had not informed the court before Goodwin appeared at the hearing, because the court desired to have a marshal present if Goodwin was there. Goodwin asserted that the call "shows me that the Court has significant extra-judicial bias against me." Declaration

---

1. Hon. George B. Nielsen, Jr., Chief Bankruptcy Judge for the District of Arizona, sitting by designation.

2. The following discussion of the background facts is based on the summary provided by bankruptcy court in the Memorandum Opinion filed March 30, 1995. The Appellants do not controvert this outline of events.

of Michael Frank Goodwin (hereinafter "Declaration of Goodwin"), at 13.

Second, Goodwin discovered a letter from Mosier to the bankruptcy judge, dated May 27, 1993 and containing the following statement:

> After the hearing [on Monday, May 24, 1993] and the surprise appearance by Mike Goodwin, I phoned Guy Orms at the District Attorney's office and advised him of the proceeding in your Court that Monday and all that had taken place. I told him of your specific request that criminal referrals go forward.

Letter from Mosier to the Bankruptcy Judge dated May 27, 1993, Exhibit 1 to Declaration of Goodwin, at 1. Goodwin reviewed the transcript of the hearing on May 24. The only reference to a criminal referral by the bankruptcy judge is as follows:

> I also want, Mr. Rense, you and the Trustee to take a very clear look at what rights this estate has vis-a-vis Mr. Goodwin. As I understand it, the estate has substantial rights against him—claims.
>
> My understanding is there was an alleged conversion of funds of this estate by Mr. Goodwin. I don't know if there's any criminal allegations that have been made in connection with what happened.

Transcript of May 24, 1993 Hearing, at 11. From this, Goodwin stated, "I can only conclude that extra-judicial conversations were taking place between you and Mr. Mosier or that Mr. Mosier lied to Mr. Ormes [sic]." Declaration of Goodwin, at 14.

Third, Goodwin alleged that bias was shown because Goodwin "exposed the theft" of estate assets to the bankruptcy judge, but the court made no other criminal referrals of which Goodwin is aware. *Id.* (alleging that no other criminal referrals were made); *see also id.* at 19 (admitting that "no other persons *appear* to have been subjected to criminal referrals...." (emphasis added)). Goodwin also asserted that bias was shown because the bankruptcy judge once suggested Goodwin lacked credibility, and because

"the Court's position throughout the Transcript [of a hearing on November 9, 1989] is that I am a bad person." Declaration of Goodwin, at 17.

On December 8, 1994, McIntosh, Goodwin's attorney, issued subpoenas relating to the motion for recusal. These subpoenas were directed to Mosier, Mosier's attorney Kirk Rense ("Rense"), and two other attorneys who were associates with Rense's firm. The subpoenas directed all four to appear for depositions. In addition, the subpoenas directed Mosier and Rense to produce the following: (1) all documents referring in any way to communications between Mosier or Rense and the Orange County District Attorney's Office; (2) all documents referring to any tax return filed on behalf of the Goodwin bankruptcy estate; and (3) all documents referring in any way to any communication with over 75 entities or individuals, including the U.S. Department of Justice and the U.S. Internal Revenue Service. One of the persons named in this list was the bankruptcy judge.[3]

Mosier filed a motion seeking an order quashing the subpoenas, a protective order, and sanctions. Durkin subsequently joined in Mosier's motion, alleging that Goodwin and McIntosh had served or attempted to serve similar subpoenas on Durkin, Durkin's counsel, Durkin's former counsel, and Durkin's accountant. All of the subpoenas were based upon Goodwin's motion to recuse.

The court granted Mosier's motion for shortened notice, and a hearing on the motions to quash was held on January 4, 1995. At this hearing, McIntosh presented an additional argument for recusal: that over 600 pleadings had been filed in the bankruptcy without proper notice to Goodwin or Seidel, and that those pleadings therefore constituted ex parte communications. In support, the Appellants pointed to a 1989 letter from counsel for Durkin to one of the subpoenaed associates of Rense, stating that Durkin's counsel had received a letter from Goodwin that did not give Goodwin's address, but in

---

3. The list of 75 entities is numbered from (a) through (www). Significantly, the bankruptcy judge is not listed until (yy).

which Goodwin represented that he could be contacted through another individual.

The court granted the motions to quash the subpoenas. The court concluded that a motion for recusal was not a contested matter under Fed.R.Bankr.P. 9014, and therefore no discovery was available. In addition, the court found that the discovery requested was overbroad with regard to the recusal motions. None of the subpoenaed persons, with the exception of Mosier, had any knowledge of whether Mosier had had extrajudicial contacts with the court. In order to "clear the air," however, the court asked Mosier to appear for deposition and to produce all written documents relating to communications with the court regarding the criminal referral.

On January 6, 1995, the Appellants filed a motion to reconsider the order quashing the subpoenas. That same day, Mosier appeared at McIntosh's office to answer questions under oath pursuant to the bankruptcy judge's request. The Appellants declined to take the deposition under those circumstances, apparently out of concern that doing so would constitute a waiver of the Appellants' motion to reconsider. Although Mosier's counsel offered to waive any objection on that basis, McIntosh took the position that Mosier's counsel could not ethically stipulate to such a waiver. The motion to reconsider was subsequently denied.

A hearing was held on January 10, 1995 regarding the Appellants' motion to recuse. The court declined to allow the Appellants to call and cross-examine witnesses, and ultimately denied the motion to recuse. The court's subsequent order indicated that (1) there was no ex parte communication with Mosier regarding the criminal referral; (2) if the court had contacted Lobel, Goodwin's former attorney, it was an entirely proper contact based on the court's concern for courtroom security; and (3) pleadings filed with defective notice do not constitute ex parte communications.

On March 9, 1995, the court entered a written order granting the motion to quash the subpoenas, denying the motion to recuse, and denying the motion to reconsider the

oral order quashing the subpoenas. The Appellants filed a timely notice of appeal.

On March 30, 1995, the court entered a memorandum opinion and order regarding the motion for sanctions. The memorandum opinion included an extensive discussion of the reasons for quashing the subpoenas. The court granted $3,000 in sanctions against McIntosh for the attorneys' fees incurred in quashing the subpoenas. On April 14, 1995, the court entered an order correcting typographical errors in the memorandum opinion and order. The Appellants filed timely notices of appeal from both of these orders as well.

## ISSUES

The Appellants present the following issues:

1. Whether the bankruptcy court improperly concluded that the alleged ex parte contacts did not demonstrate a bias against Goodwin and Seidel.

2. Whether the bankruptcy court erred in concluding that the affidavits submitted in support of recusal were not factually sufficient to require recusal.

3. Whether the bankruptcy court erred in denying Goodwin and Seidel the opportunity to take discovery in support of the motion to recuse, and in refusing to allow Goodwin and Seidel to call witnesses at the January 10, 1995 hearing.

4. Whether the bankruptcy court erred in sanctioning McIntosh for issuing subpoenas for discovery in support of the motion to recuse.

## STANDARD OF REVIEW

An order denying a motion to recuse is reviewed for abuse of discretion. *Lopez v. Behles (In re American Ready Mix, Inc.)*, 14 F.3d 1497, 1500 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994); *Ronwin v. State Bar of Arizona*, 686 F.2d 692, 701 (9th Cir.1981), *rev'd on other grounds sub nom. Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). A court's determination to issue a protective order regarding discovery is also reviewed for abuse of discretion. *Kirshner*

*v. Uniden Corp. of America,* 842 F.2d 1074, 1079 (9th Cir.1988).

### DISCUSSION

#### 1. *This is an Interlocutory Appeal.*

An order denying a motion to recuse is interlocutory. *Stewart Enterprises, Inc. v. Horton (In re Horton),* 621 F.2d 968, 970 (9th Cir.1980) ("The decision of a bankruptcy judge not to disqualify himself, however, cannot be appealed until a direct appeal is taken from a final decision adverse to the moving party."); *United States v. State of Washington,* 573 F.2d 1121, 1122 (9th Cir.1978) (appeal from district court's order denying motion to recuse). *See also American Ready Mix,* 14 F.3d at 1499 (bankruptcy court's order denying motion to recuse is interlocutory, not final). We find it appropriate to treat the notice of appeal as a motion for leave to appeal, and grant the motion.[4] 28 U.S.C. § 158(a);[5] Fed.R.Bankr.P. 8003(c). *See Roderick v. Levy (In re Roderick Timber Co.),* 185 B.R. 601, 604 (9th Cir. BAP 1995).

#### 2. *28 U.S.C. § 144 Does Not Apply To Bankruptcy Judges.*

The Appellants contend that the bankruptcy judge was required to recuse himself under two statutes: 28 U.S.C. § 144, and 28 U.S.C. § 455. Section 144 states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

Section 144 applies only to district court judges. 28 U.S.C. § 144 (by its terms applicable only to the district courts); *Liteky v. United States,* —— U.S. ——, ——, 114 S.Ct. 1147, 1153, 127 L.Ed.2d 474 (1994) (section 455 was amended to include "bias or prejudice" grounds stated in section 144 so that the standard was "applicable to *all* justices, judges and magistrates (and not just district judges). . . ." (emphasis added)). *See Bernard v. Coyne (In re Bernard),* 31 F.3d 842, 843 n. 3 (9th Cir.1994) (circuit court judge not subject to recusal under section 144). Bankruptcy judges are subject to recusal only under section 455. Fed. R.Bankr.P. 5004(a); *Southwestern Gold, Inc. v. Williams (In re Williams),* 99 B.R. 70, 71 n. 1 (Bankr.D.N.M.1989); *see Horton,* 621 F.2d at 970 (Bankruptcy Act case; disqualification of bankruptcy judge was controlled by terms of former Bankruptcy Rule 505(b), "just as district judges are bound by 28 U.S.C. §§ 144 and 455."). Thus, the requirement of section 144 that the judge assume that the facts asserted in the affidavit are true and examine them only to determine their legal sufficiency, *see Ronwin,* 686 F.2d at 700 n. 10, has no application here.

#### 3. *28 U.S.C. § 455: Summary of the Law.*

Section 455 states in its relevant part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in

---

**4.** There exists some precedent suggesting that this appeal should be treated as a petition for a writ of mandamus. *E.g., American Ready Mix,* 14 F.3d at 1499. It is not necessary for us to reach the issue. Our decision to affirm necessarily implies that we would also affirm under the substantially higher showing necessary to obtain a writ of mandamus. *American Ready Mix,* 14 F.3d at 1501 (because court affirmed under abuse of discretion standard, it would consequently also affirm if it reviewed under higher standard applicable to writs of mandamus).

**5.** Section 158 has subsequently been amended. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 102, 108 Stat. 4106, 4108 (1994). Because this case was filed before October 22, 1994, the effective date of the act, these amendments have no application here. *Id.,* § 702(b)(1), 108 Stat. at 4150.

any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . .

28 U.S.C. § 455(a), (b)(1).

■ The test for disqualification under section 455(b)(1) is the same as under section 144: "whether 'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Ronwin,* 686 F.2d at 700–01 (quoting *United States v. Winston,* 613 F.2d 221, 222 (9th Cir.1980)). All evaluations of bias or prejudice under section 455 are made using an objective standard. *Liteky,* —— U.S. at —— ——, 114 S.Ct. at 1153–54. "Scienter is not an element of a violation of § 455(a)." *Liljeberg v. Health Serv. Acquisition Corp.,* 486 U.S. 847, 859, 108 S.Ct. 2194, 2202, 100 L.Ed.2d 855 (1988).

■ In a motion to recuse under section 455, the judge is not required to take the factual allegations as true. *American Ready Mix,* 14 F.3d at 1501.

### 4. *The Alleged Ex Parte Contact With Mosier Regarding the Criminal Referral Does Not Suggest Prejudice.*

There are two ways in which the Appellants contend that the series of events surrounding the criminal referral demonstrates prejudice. First, they contend the judge was prejudiced because he allegedly requested that the trustee make a criminal referral regarding Goodwin's conduct. Second, they contend the bankruptcy judge was biased because the judge did not make any criminal referrals based on the evidence presented by Goodwin. These arguments are meritless.

■ First, no ex parte contact took place. Even under section 144 a judge is not required to assume that the allegation of an ex parte contact is true. *Ronwin,* 686 F.2d at 701 (where the allegation of ex parte contacts "relates to facts that were peculiarly within the judge's knowledge" (footnote omit-

ted); plaintiff alleged that ex parte communications must have taken place, because defendant's counsel knew when the judge would be in Phoenix for the purpose of a hearing date). Here, the judge specifically stated that the only statement he made regarding a criminal referral was the one found on the record at the May 24, 1993 hearing. Goodwin presented a false dichotomy in his declaration in stating that either ex parte communications were taking place or Mosier lied in the letter (*see* Declaration of Goodwin, at 14); he ignores the possibility that Mosier simply misunderstood the court's remarks at the hearing.

■ Second, even if the contact had taken place it was not ex parte. The prohibition against ex parte contacts is based upon notions of procedural due process. *Guenther v. Commissioner of Internal Revenue,* 889 F.2d 882, 884 (9th Cir.1989). Procedural due process requires that a party be provided notice and an opportunity to respond. *Id.* If the party has no right to notice or an opportunity to respond, then it follows that the communication is not ex parte.

The criminal referral statute, 18 U.S.C. § 3057, states as follows:

(a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title [involving bankruptcy fraud] or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

(b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination

he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

18 U.S.C. § 3057.

It is clear that Goodwin has no due process right to notice and an opportunity to respond before a criminal referral is made. The statute itself does not create any such right.[6] The result would be nonsensical, in that it would (1) require that all potential criminal defendants be provided notice of a possible criminal referral; (2) permit the potential defendant to appear and present evidence on whether the conduct should be referred for investigation; and (3) permit the potential defendant to appeal an adverse decision that the criminal referral should be made. A potential defendant does not have those rights even before a grand jury, the next procedural step after a criminal referral and investigation. *See* Fed.R.Crim.P. 6(d) (listing who may be present during grand jury sessions; potential defendant is not listed); *United States v. Salsedo*, 607 F.2d 318, 319 (9th Cir.1979) (before a grand jury, a potential defendant has no right to appear as a witness, no right to introduce evidence to rebut the prosecutor's case, and no right to cross-examine witnesses). We find no persuasive law or reasoning to support such a drastic limitation of the criminal investigation process.

Third, section 3057 appears to contemplate that such allegedly "ex parte" contacts may take place. Both the bankruptcy judge and the trustee have a duty to make criminal referrals under 18 U.S.C. § 3057. A

judge who privately suggests that the trustee make a criminal referral has not violated the provisions of that section, the Appellants' inflammatory rhetoric notwithstanding ("such a referral is prima facie illegal," Appellants' Brief, at 9).

Fourth, even if the judge had privately requested that the trustee make a criminal referral, and even if this contact was ex parte, it would not demonstrate a bias based on extrajudicial sources. The request in no way indicates that the judge received any information during the contact, and by definition implies that the decision to make a criminal referral was made prior to the "ex parte" communication.

Nor was Mosier's May 27, 1993 letter to the judge improper. Section 3057(a) provides that the other officers need not make a criminal referral if one has already done so. Given that a criminal referral may be made without notice or a hearing before the court, the statute implicitly contemplates that an officer making a criminal referral may privately inform the other officers that such a referral has been made. Moreover, section 3057(b) requires the United States attorney to report to the judge regarding the results of the investigation, thus contemplating that the judge will be kept informed of the status of the criminal referral. The information contained in Mosier's May 27, 1993 letter to the judge about the status of the criminal referral falls within both exceptions.[7]

The Appellants suggest that bias is demonstrated because Goodwin presented evidence to the court that Mosier and others had engaged in criminal acts, but the bank-

---

6. Although section 3057 states that the judge or trustee should have "reasonable grounds for believing" that there has been a criminal violation, this is an administrative direction that does not create any procedural rights in the potential defendant. *See United States v. Filiberti*, 353 F.Supp. 252, 253 (D.Conn.1973) (criminal defendant in bankruptcy fraud prosecution argued that indictment should be dismissed because preindictment delay violated 18 U.S.C. § 3057; court held that section 3057's direction that the United States attorney should present matter to the grand jury "without delay" "does not on its face confer any procedural rights upon a defendant in a bankruptcy fraud prosecution.").

7. The Appellants misstate the facts in repeatedly contending that the bankruptcy judge "admitted reading" the letter from Mosier to the court regarding the criminal referral. Appellants' Brief, at 8; *see also* Appellants' Brief, at 9 (bankruptcy judge "admitted receiving and reading" the letter). The judge stated that he did not recall reading such a letter, and that his secretary generally screened out such communications, but that he would assume for the purposes of the motion that he had in fact read it. This is not an "admission" that the judge received and read the letter.

ruptcy court did not make any criminal referrals in that matter. This argument is also meritless. First, the fact the Appellants do not know of any other criminal referral does not mean no such referral was made. A criminal referral is no guarantee of an indictment, and the Appellants have no right to be informed of criminal referrals made against other parties. Second, even if no criminal referral was made there is no evidence of bias. The Appellants' assertion that the allegations of criminal conduct were "well supported," Appellants' Brief at 15, does not mean that the allegations were, in fact, well supported. There is no evidence that the bankruptcy judge erred in refusing to make a criminal referral, if in fact he did so refuse. And even if he erred, that does not constitute bias. A judge may be wrong without being prejudiced. *See Liteky,* —— U.S. at ——, 114 S.Ct. at 1157 ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality motion.... Almost invariably, they are proper grounds for appeal, not for recusal.").

At its core, the Appellants' contention seems to be nothing more than an objection that Goodwin was indicted for criminal acts, and other parties were not. The Appellants' attempt to bootstrap this into a demonstration of prejudice is frivolous.

5. *Neither the Alleged Ex Parte Contact With Lobel nor the Ex Parte Contacts With the Judge's Chambers Regarding Security Suggest Prejudice.*

■ The Appellants contend that bias is shown because (1) the judge allegedly called Lobel and told him to inform the court when Goodwin would appear at hearings so that the court could have a marshal present; and (2) the judge admitted that his secretary had received calls from persons attending the proceedings who expressed concerns about their safety.

■ There is no merit to the contention that the judge should be disqualified because of phone calls to his secretary regarding security. The judge has an obvious administrative responsibility concerning the security of the courtroom. This includes protecting not only the judge personally, but also the

parties, the attorneys, the witnesses, and the spectators. A judge's ex parte contacts with government attorneys regarding security thus was held not to require the judge to recuse himself, even though the ex parte contacts related to plans by the criminal defendants to flee the country, to eliminate witnesses, and to kill the judge himself. *United States v. Phillips,* 664 F.2d 971, 1000–03 (5th Cir. Unit B 1981), *cert. denied sub nom. Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) *and cert. denied sub nom. Myers v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), *and cert. denied sub nom. Platshorn v. United States,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). Here, the expressions of concern were made to the judge's secretary, and not to the judge personally. The security imposed was hardly exceptional. These facts would not cause a reasonable person to question the judge's impartiality.

■ The alleged ex parte contact with Lobel also provides no suggestion of bias. As noted previously, there is no requirement that a judge accept as true the allegations made in connection with a section 455 motion. Even assuming that the contact took place, it took place with Goodwin and Seidel's attorney; thus, they were fully aware of the contact. The allegation is that the judge conveyed a request, not that he received any information. And the request related to matters of courtroom security, not the underlying merits of any matters being litigated before the court. The Appellants' arguments in this regard are frivolous.

6. *Goodwin and Seidel's Allegations of Insufficient Notice Are Unsupported by the Record, and Do Not Suggest Prejudice.*

■ The Appellants contend the judge was prejudiced or biased because over 600 pleadings were allegedly filed in the bankruptcy without proper notice to Goodwin or Seidel. The record on appeal includes only one of the 600 pleadings and other documents allegedly submitted to the court without notice, and that document was submitted in a different, though related, bankruptcy.

■ The Appellants' contentions regarding these pleadings are meritless. Judges regularly and routinely must determine whether or not proper notice was provided. Where the notice was improper, the judge issues such remedial orders as may be appropriate. The mere fact that an opposing party did not provide proper notice, standing alone, does not create any reasonable basis for questioning the judge's impartiality. *Cf. Guenther v. Commissioner of Internal Revenue*, 939 F.2d 758, 761 (9th Cir.1991) (where tax court judge received ex parte trial memorandum, refused to permit opposing parties access to memorandum, and nowhere indicated that he was not influenced by the memorandum, judge "demonstrated a lack of faith in and commitment to our adversarial system of judgment," and parties were entitled to new trial before judge who had not been exposed to the memorandum). Unlike *Guenther*, the Appellants have not presented anything that would suggest to a reasonable person that the bankruptcy judge was aware of this alleged lack of notice.[8] Nor is there any indication that the bankruptcy judge has been so prejudiced by the allegedly ex parte communications that he can no longer impartially adjudicate the case. Indeed, under these circumstances it must be questioned whether these pleadings can be considered to be "extrajudicial sources" at all, since the judge received them in his judicial capacity without knowing of any problem with notice. *See Phillips*, 664 F.2d at 1004 (comments of judge based on information learned in ex parte contacts "did not stem from an extrajudicial source"; judge had been told ex parte by government attorneys of plans to disrupt trial and kill judge himself).

■ The one document that is part of the record on appeal that was allegedly filed without notice is a "Notice of Motion and Motion for Approval of Trustee's Budget No. 1," filed by Durkin in the ESI bankruptcy case on October 27, 1994. The notice is an exhibit to an objection filed by the Appellants on the ground of inadequate notice. The Appellants admit that "[t]he Bankruptcy Judge ruled that a general order allowed him to approve trustee budgets without notice," [9] Appellants' Brief at 17, but contend that the bankruptcy court's decision was incorrect and the communication was an ex parte contact prohibited by Fed.R.Bankr.P. 9003.

■ We reject this argument. Not only is the document not part of this bankruptcy case, but the Appellants' contention that that decision was legally erroneous is irrelevant. The ruling can only be challenged on a direct appeal, not by a collateral attack. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981) (defendant who did not appeal was bound by district court's judgment, even though other defendants in same action successfully obtained reversal of judgment on appeal). There is nothing in the excerpts of record to suggest that there was an appeal that resolved the matter in favor of the Appellants. Accordingly, the contact was not an ex parte contact prohibited by Fed. R.Bankr.P. 9003.

It is also worth noting that, according to the Appellants, the bankruptcy judge has set aside a $750,000 default judgment against Seidel, and permitted Seidel to bring a complaint to set aside another $4 million judgment. At least one of these judgments, if not both, appear to have resulted from the allegedly improperly noticed pleadings. These actions are wholly inconsistent with the notion that the bankruptcy judge is prejudiced against the Appellants based on the pleadings allegedly filed without notice.[10]

---

8. The Declaration of Goodwin asserts that the judge was "duped" because he had "been told over and over that I [Goodwin] was unavailable." Declaration of Goodwin, at 12.

9. The order is not part of the excerpts of record.

10. At the May 24, 1993 hearing, Goodwin asserted in open court that Rense, counsel for Mosier, had known of his location for well over a year. After having Goodwin state for the record his current address, the court said:

THE COURT: Well, this—I mean, I'm amazed to learn that the estate knows where you have been for the past—
MR. RENSE: Your Honor—
THE COURT: —year.
MR. RENSE: —that's incorrect. We have been given a variety of addresses at which to direct correspondence to—
THE COURT: Right.
MR. RENSE: —Mr. Goodwin which been [sic] at relatives, et cetera.

*7. There is No Other Evidence of Bias.*

To the extent that the Appellants contend there is other evidence of bias, we reject their arguments. These allegations all deal with the judge's rulings on matters properly before him.

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (CA2 1943).

*Liteky,* —— U.S. at ——, 114 S.Ct. at 1155. There is no evidence of bias in the judge's statements regarding Goodwin's credibility or character.

*8. The Bankruptcy Court Did Not Improperly Deny Discovery.*

■ The Appellants contend that the bankruptcy court erred in denying discovery because of its conclusion that a motion to recuse is not a contested matter. We need not reach this argument. Even assuming that the proceeding was a contested matter, the court properly refused to permit the Appellants to make discovery.

> [A] motion to recuse is not a mere pleading, a first step towards a possible case. Like any public official, a judge is presumed to be qualified to act, and an objector must come with a prima facie case, not just a hope of developing one. *Cf. Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (Plaintiff suing public official must show at the start a breach of qualified immunity, and cannot proceed by way of depositions). It should be obvious that any other rule could make a shambles of judicial proceedings.

*Ricci v. Key Bancshares of Maine, Inc.,* 111 F.R.D. 369, 373 n. 4 (D.Me.1986). The Appellants have failed to show even a reasonable suspicion that the judge was biased or prejudiced. In the absence of such a showing, the Appellants were simply engaging in a fishing expedition. *See Lyeth v. Chrysler Corp.,* 929 F.2d 891, 899 (2d Cir.1991) (district court properly denied requests for discovery regarding whether arbitrator had been biased or prejudiced). The bankruptcy court properly denied discovery.

Specifically addressing each area subject to discovery:

(1) There was no need for discovery regarding the Mosier letter. Even if the alleged ex parte contacts occurred, they were entirely appropriate and provide no basis for suspecting the existence of other, improper contacts.

(2) There was no need for discovery regarding the court's communication with Lobel, or the "ex parte" requests to the judge's chambers for security. The contacts were again entirely appropriate and provide no basis for suspecting the existence of other, improper contacts.

(3) There was no need for discovery of the extent to which any of the parties knew of Goodwin's whereabouts during the disputed period, at least as regards the motion to recuse. The judge either became biased against the Appellants from exposure to the inadequately noticed pleadings, or he did not. If he did become biased, he should recuse himself regardless of any bad faith by Mosier and the others. If he did not become biased, then Mosier's subjective, hidden bad faith is irrelevant to the motion to recuse.

Although McIntosh purports to attack the sanction award, the only basis he asserts for

---

THE COURT: I'm just not—
MR. RENSE: We have never been told that he was residing at that address, Your Honor.
THE COURT: I'm just saying, I am amazed if that's the situation.

Transcript of May 24, 1993 Hearing, at 16–17. This expression of surprise is also inconsistent with the allegation that the judge has been rendered biased by exposure to the inadequately noticed pleadings.

doing so is that discovery should have been allowed. Because we find that discovery was properly denied, we affirm the award of sanctions.

CONCLUSION ·

This appeal is meritless. There is no indication that the bankruptcy judge manifested any improper bias or prejudice toward the Appellants. Indeed, the record suggests that the judge has shown an extreme amount of patience. We AFFIRM.