NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>STEVEN MARK HAYDEN,<br>　　　　　Debtor. | BAP Nos.　NV-24-1115-CLB<br>　　　　　　　NV-24-1116-CLB<br>　　　　　　　NV-24-1117-CLB<br>　　　　　　　(Related Appeals) |
| In re:<br>WESTERN STEEL INC.,<br>　　　　　Debtor. | Bk. Nos. 22-50564-gs<br>　　　　　　23-50118-gs |
| STEVEN MARK HAYDEN,<br>　　　　　　　Appellant,<br>v.<br>WESTERN STEEL INC.; WILLIAM B.<br>CASHION,<br>　　　　　　　Appellees. | Adv. No. 23-05012-gs<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Hilary L. Barnes, Bankruptcy Judge, Presiding

Before: CORBIT, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

These appeals arise out of orders entered in three related matters—an

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

individual chapter 13[1] case, an involuntary corporate chapter 11 case, and an adversary proceeding. All three matters relate to a longstanding dispute between Steven Mark Hayden ("Hayden"); William B. Cashion ("Cashion"), Hayden's uncle; and Western Steel Inc., an Alabama corporation ("Western Steel Alabama"), Cashion's company. Hayden filed motions to recuse Judge Gary Spraker in each case after the judge made rulings adverse to Hayden. In what might have been an excess of caution, Judge Spraker referred the recusal motions to Judge Hilary Barnes. Judge Barnes denied all three recusal motions.

Because the court did not abuse its discretion in denying Hayden's request for recusal, we AFFIRM.

## FACTS[2]

In early 2007, Cashion executed a general, durable power of attorney designating his nephew Hayden as Cashion's agent and attorney-in-fact. A few years later, Hayden began using his authority as agent and attorney-in-fact to take control over Cashion's assets, without Cashion's knowledge. In the summer of 2011, Hayden secretly created two trusts he exclusively controlled and transferred the bulk of Cashion's assets to the trusts without

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of the docket and documents filed in the underlying bankruptcy cases. *See Atwood v. Chase Manhattan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Cashion's knowledge or consent. As part of this process, Hayden took control of Cashion's company, Western Steel Alabama. Hayden informed Cashion in late 2012 that Cashion no longer owned Western Steel Alabama.

Cashion immediately attempted to revoke Hayden's power of attorney. Cashion and Western Steel Alabama (collectively, the "Alabama Parties") sued Hayden and his wife in Alabama state court. The complaint asked the state court to void Hayden's acts as trustee and enjoin Hayden from future attempts to control Cashion's assets, including Western Steel Alabama. The Alabama Parties also sought damages for breach of fiduciary duty, conspiracy, and conversion.

On August 20, 2013, the Alabama state court entered a final judgment (the "First Alabama Judgment"). The First Alabama Judgment included a permanent injunction, which ordered Hayden to "cease all actions that in any way relate to William B. Cashion's assets, interests and rights," and prohibited and permanently enjoined Hayden from future attempts to control Cashion's assets. Additionally, the First Alabama Judgment declared that all of "Hayden's actions as Cashion's agent under [the] January 29, 2007 power of attorney are hereby DECLARED to be *void ab initio*." The First Alabama Judgment was affirmed on appeal. Consequently, since 2013, Hayden has been enjoined from taking any action against the Alabama Parties.

Despite the permanent injunction, Hayden continued to harass the Alabama Parties through various legal fora and continued to act in a

3

manner that violated the First Alabama Judgment. For example, Hayden created a company in Nevada with the same name as Western Steel Alabama—"Western Steel Inc."—to intentionally confuse and conflate his imposter corporation with Western Steel Alabama.

On August 31, 2022, the Alabama state court entered an order declaring Hayden a vexatious litigant and permanently enjoined Hayden from serving or filing documents without first obtaining leave of court (the "Second Alabama Judgment"). At present, Hayden has been assessed approximately $2 million in fines, sanctions, and attorneys' fees.

## A.     Hayden's chapter 13 bankruptcy case

On October 21, 2022, Hayden filed a chapter 13 bankruptcy petition. The case was originally assigned to Judge Natalie Cox.

Shortly after filing his petition, Hayden moved to dismiss his chapter 13 bankruptcy case. The Alabama Parties responded by arguing that Hayden had filed a meritless petition and requested sanctions plus a 180-day bar on Hayden refiling a bankruptcy case. The chapter 13 trustee also sought dismissal of Hayden's case under § 1307(c), for cause, due to Hayden's failure to file required documents and to appear at the first meeting of creditors.

The bankruptcy court granted Hayden's motion to dismiss but retained jurisdiction to decide the Alabama Parties' request for sanctions.

On March 23, 2023, the Alabama Parties filed a separate motion for sanctions against Hayden. The sanctions motion sought a two-year

4

nationwide ban on Hayden refiling another bankruptcy petition. Hayden opposed the sanctions motion.

While the sanctions motion was pending, the case was reassigned to Judge Spraker. Judge Spraker presided over two evidentiary hearings on the sanctions motion.

On March 18, 2024, Judge Spraker entered a memorandum decision granting the Alabama Parties' motion for sanctions. Judge Spraker awarded monetary sanctions to the Alabama Parties in the amount of their attorneys' fees, finding that Hayden had filed his bankruptcy petition for the improper purpose of delaying the Alabama Parties' efforts to collect on the First and Second Alabama Judgments. However, Judge Spraker declined to impose a nationwide two-year bar on refiling. Hayden never appealed the sanctions order.

**B.    Western Steel Nevada's involuntary bankruptcy case**

On February 24, 2023, approximately one month before the Alabama Parties moved for sanctions against Hayden in his individual chapter 13 case, Hayden initiated an involuntary chapter 11 bankruptcy petition against his imposter company, Western Steel Inc., a Nevada corporation ("Western Steel Nevada").

In the involuntary petition, Hayden indicated he was the sole petitioning creditor and also the controlling officer of Western Steel

5

Nevada. Hayden alleged he held a claim for $1,530,000 based on a "demand promissory note."

On March 28, 2023, the bankruptcy court held a status hearing on the involuntary Western Steel Nevada petition, and expressed concerns about the validity of the petition. The same day, Hayden filed a "Notice of Default and Consent to Relief" which he signed as the "IRS Responsible Party" for Western Steel Alabama. In doing so, Hayden was attempting to consent to relief on behalf of Western Steel Alabama.

The Alabama Parties filed a motion to dismiss the Western Steel Nevada bankruptcy case. Additionally, the Alabama Parties requested the court refer Hayden to the United States Attorney for criminal charges of fraud and perjury. The Alabama Parties asserted the involuntary bankruptcy was another attempt by Hayden to interfere with Western Steel Alabama by conflating Western Steel Alabama with Hayden's Nevada corporation of the same name.

Hayden opposed dismissal, asserting that he believed Western Steel Alabama and Western Steel Nevada were the same entity—despite his previous assertions to the contrary. Hayden also alleged that he was appointed the responsible party for Western Steel Alabama by the IRS and therefore could exercise control over Western Steel Alabama.

On April 25, 2023, the Western Steel Nevada case was reassigned to Judge Spraker. Judge Spraker denied the Alabama Parties' dismissal motion, citing Hayden's statements at a May 18 hearing that the

corporation placed into involuntary bankruptcy was Western Steel Nevada, not Western Steel Alabama.

Hayden, under penalty of perjury, filed the schedules and statements for Western Steel Nevada. In the documents, Hayden identified the EIN for Western Steel Nevada as ending in 3168, the same EIN assigned to Western Steel Alabama.

Shortly after Hayden filed the schedules and statements for Western Steel Nevada, the United States Trustee filed a motion to dismiss or convert the involuntary chapter 11 case to a chapter 7 case based on Western Steel Nevada's failure to retain counsel. The Alabama Parties supported the United States Trustee's motion and advocated for dismissal. Hayden filed a statement supporting conversion.

After oral argument, Judge Spraker converted the case to a chapter 7. On February 1, 2024, the chapter 7 trustee entered a report of no distribution in the Western Steel Nevada case, but the case has not been closed.

## C.  Adversary proceeding

On August 24, 2023, Hayden filed an adversary complaint (the "Adversary Action") against the Alabama Parties, alleging the Alabama Parties: (i) violated the automatic stay in the Western Steel Nevada bankruptcy case by participating in a March 28, 2023 status hearing on Western Steel Nevada's involuntary petition; and (ii) fraudulently conveyed property in Alabama because the "purchase of the Sheriffs [sic]

sale by Western Steel Inc[.] check was not an exchange for fair market value."

Approximately three months after he commenced the Adversary Action against the Alabama Parties, Hayden simultaneously sought: (i) an extension of time to serve the summons and complaint, and (ii) an entry of default against defendant Western Steel Alabama.

On December 6, 2023, the bankruptcy court issued an order to show cause why the Adversary Action should not be dismissed because Hayden failed to provide a sufficient substantive basis for his legal claims. The same day the bankruptcy court entered the order to show cause, Hayden filed a notice on behalf of defendant Western Steel Alabama, asserting Western Steel Alabama would consent to entry of judgment. In other words, Hayden was attempting to act as the representative of both plaintiff and defendant Western Steel Alabama in the Adversary Action. The bankruptcy court sua sponte issued an order to show cause why Hayden should not be sanctioned.

Hayden filed a notice of dismissal of the Adversary Action on December 15, 2023. The bankruptcy court entered an order acknowledging the notice of dismissal was effective to dismiss the Alabama Parties but retained jurisdiction to hear and decide the order to show cause regarding sanctions.

On January 30, 2024, the bankruptcy court heard Hayden's arguments related to why he should not be sanctioned. At the hearing, the

8

bankruptcy court determined that Hayden's filing of the "Notice of Consent to Entry of Judgment" on behalf of defendant Western Steel Alabama—after Hayden had dismissed the Adversary Action—was sanctionable conduct. However, the bankruptcy court declined to impose monetary sanctions against Hayden.

Unbeknownst to the court, earlier that same day, Hayden had filed a "Notice of Corporate Ownership Statement of Western Steel In[c.]" in the dismissed Adversary Action. The notice indicated that Hayden was the corporate owner of Western Steel Alabama. Hayden failed to disclose this filing, or its purpose, during the show cause hearing.

In light of this conduct, the court reexamined the decision to refrain from sanctioning Hayden. The bankruptcy court entered an order setting a scheduling conference on the order to show cause regarding sanctions, related to Hayden's attempt to conflate Western Steel Nevada with Western Steel Alabama. Hayden did not appear at the in-person hearing on the order to show cause.

On April 15, 2024, the Alabama Parties filed documents in support of their motions for sanctions and filed an application to declare Hayden a vexatious litigant, asserting Hayden's actions in the bankruptcy court were frivolous and harassing towards the Alabama Parties.

On March 31, 2025, while the present appeals were pending, Judge Spraker entered a memorandum decision determining that Hayden was a

vexatious litigant, imposing a pre-filing review, and discharging all prior orders to show cause.

## D. Recusal

In each of the above three referenced matters, Hayden filed substantially similar motions to recuse Judge Spraker ("Recusal Motions").[3]

Primarily, Hayden alleged that Judge Spraker was "corrupted" by Cashion, "who has millions of dollars to pay him." Hayden "supported" these allegations by citing to several of Judge Spraker's court rulings. For instance, Hayden argued that Judge Spraker "hit Hayden with his motion for sanctions to benefit [Cashion]." Hayden also argued that several acts evidenced Judge Spraker's bias, including: (i) taking judicial notice of the First Alabama Judgment; (ii) failing to take notice that the chapter 7 trustee's abandonment of approximately $6 million in assets was done "for [Cashion's] benefit and enjoyment" in the Western Steel Nevada bankruptcy;[4] (iii) failing to acknowledge calls made by Cashion's attorney to the chapter 7 trustee Christopher Burke in the Western Steel Nevada

---

[3] The Recusal Motions were filed at different points in time in each case. The first recusal motion was filed in the Adversary Action on March 14, 2024, the same day that Hayden failed to appear at the show cause scheduling conference. The second recusal motion was filed in Hayden's chapter 13 case on March 22, 2024, shortly after the sanctions order was entered in that case. The third and final recusal motion was filed in the Western Steel Nevada case on April 11, 2024, approximately two months after the chapter 7 trustee entered a report of no distribution in that case.

[4] Hayden bases this allegation on the chapter 7 trustee's report of no distribution in the Western Steel Nevada case, which provides that "no property [was] available for distribution from the [Western Steel Nevada] estate over and above that exempted by law."

case; (iv) ignoring the "prepayment of attorney fees" as a favor to Cashion; and (v) ensuring Cashion received "the benefit of twenty million dollars in scheduled assets" in the Western Steel Nevada bankruptcy case.

Hayden also alleged Cashion was "in business" with certain Alabama judges who were purportedly trustees for a cemetery. Hayden further asserted that Cashion "told me he had paid $250,000 for legal services from an Alabama Supreme Court judge" and that Cashion stated, "everyone has their price." However, Hayden did not explain how these statements were relevant to Judge Spraker. Instead, Hayden attempted to portray himself as the victim of Cashion's bad acts and repeated his argument that he owned Western Steel Alabama, asserting Judge Spraker knew or should have known Cashion was not the "true owner" of Western Steel Alabama based on Hayden's explanation of events.

Hayden also challenged the bankruptcy court's jurisdiction to continue hearing matters in a "dismissed" case. Specifically, Hayden disputed the bankruptcy court's jurisdiction to enter the sanctions order in his dismissed chapter 13 case.

Finally, Hayden alleged that Cashion, "a wealthy nonparty," influenced Judge Spraker by allowing Cashion's attorney, Joel Schwarz, "to appear and participate in the January 30, 2024 hearing as a corporate attorney without filing required corporate disclosure statements." Hayden also pointed to the March 14, 2024 hearing on the bankruptcy court's order to show cause regarding sanctions in the Adversary Action (which Hayden

11

did not attend) as evidence of another purportedly improper appearance by Schwarz.

The Alabama Parties filed oppositions to the Recusal Motions.

**1.      Recusal hearing**

Judge Spraker referred the Recusal Motions to Judge Hilary Barnes for determination.

On June 21, 2024, Judge Barnes heard oral argument on the consolidated Recusal Motions. At the hearing, Judge Barnes determined she had jurisdiction to decide all three Recusal Motions and clarified that the sole issue to be addressed at the hearings was recusal.

When Hayden was asked to substantiate his allegations of "corruption" against Judge Spraker with specific evidence aside from court rulings, Hayden was unable to provide evidence. Instead, Hayden continued to argue that Judge Spraker's rulings evidenced his bias.

Hayden also continued to assert inferences of bias based on statements made by Cashion, such as Cashion purportedly "bragg[ing]" about paying judges and sheriffs in Alabama at some point in the past. Judge Barnes questioned how this alleged statement by Cashion related to Judge Spraker. Instead of responding, Hayden repeated his disagreements with Judge Spraker's rulings. Hayden also alleged that the chapter 7 trustee in the Western Steel Nevada bankruptcy reported that Cashion's attorney warned the trustee "not to touch the assets in Alabama." Hayden stated this conversation demonstrated Cashion was contacting a "judicial official"

and "persuading them outside the record not to go and get the assets."

### 2. Recusal Order

On July 8, 2024, in each of the three cases, Judge Barnes entered an identical order denying Hayden's Recusal Motions (the "Recusal Order"). The Recusal Order found that Hayden's arguments and allegations did not arise from an extra-judicial source, and Hayden failed to demonstrate that Judge Spraker showed any bias or favoritism towards the Alabama Parties.

Specifically, the Recusal Order found that Hayden's demand for recusal was based solely on Judge Spraker's rulings, statements, and conduct in the bankruptcy cases and Adversary Action. The Recusal Order noted that Judge Spraker's remarks and rulings did not reveal "deep-seated favoritism or antagonism," but instead demonstrated Judge Spraker's fair judgment by carefully examining the facts and applying the appropriate legal standards. The Recusal Order noted several of Judge Spraker's rulings on substantive issues, some of which favored Hayden—such as converting the Western Steel Nevada case (instead of dismissing it), declining to impose a two-year bar on refiling against Hayden, and declining to impose monetary sanctions against Hayden in the Adversary Action. The Recusal Order stated that if Hayden disagreed with the rulings, the proper avenue to contest the rulings was an appeal, not a motion for recusal.

Moreover, the bankruptcy court concluded that Hayden lacked tangible evidence to support his allegations, and merely provided

13

"suspicions, allegations, and innuendo" of purported corruption. These "suspicions" were insufficient to satisfy the required showing of "extrajudicial" evidence. The bankruptcy court additionally found Hayden's assertions suggested a "pattern of behavior to circumvent the judicial process and to shop for a judge who might rule in his favor."

Hayden appealed the Recusal Order entered in each of the three cases.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We discuss our jurisdiction below.

## ISSUE

Whether the bankruptcy court abused its discretion in denying Hayden's Recusal Motions.

## STANDARD OF REVIEW

A bankruptcy court's denial of a motion to recuse is reviewed for abuse of discretion. *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997); *Hale v. U.S. Tr.* (*In re Basham*), 208 B.R. 926, 930 (9th Cir. BAP 1997).

A bankruptcy court abuses its discretion when it applies the wrong legal standard or when its findings of fact or its application of law to fact are "illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

14

## DISCUSSION

### A.    Scope of the appeal

Although each of Hayden's notices of appeal identified the Recusal Order as the order appealed, in his appellate briefing, Hayden indicated he sought to appeal more than the recusal issue. For example, Hayden raised arguments related to the sanctions order and the alleged failure of the attorney for the Alabama Parties to file a "Corporate Ownership Statement."

An appeal "from a bankruptcy court's judgment, order, or decree to a district court or BAP may be taken only by filing a notice of appeal with the bankruptcy clerk within the time allowed by Rule 8002." Rule 8003(a)(1). However, we must construe pro se filings liberally. *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001). Although Hayden attempts to appeal the sanctions order, that appeal is untimely, as further explained below, and the Panel lacks jurisdiction to consider that issue.

First, an appeal of the sanctions order in Hayden's chapter 13 case is untimely. Hayden appealed each Recusal Order on July 22, 2024. In Hayden's chapter 13 case, the sanctions order was entered on March 18, 2024, nearly four months before Hayden's notice of appeal of the Recusal Order. "[A] notice of appeal must be filed . . . within 14 days after the judgment, order, or decree to be appealed is entered." Rule 8002(a)(1); s*ee also Melendres v. Maricopa Cnty.*, 815 F.3d 645, 649 (9th Cir. 2016) ("[W]e are not at liberty to overlook a defect with the notice of appeal no matter how

15

compelling an appellant's argument may be."); *Anderson v. Mouradick* (*In re Mouradick*), 13 F.3d 326, 327 (9th Cir. 1994) ("[T]he untimely filing of a notice of appeal deprives the appellate court of jurisdiction to review the bankruptcy court's order."). Therefore, Hayden's appeal of the sanctions order is untimely.

Second, although Hayden raised the issue of the Alabama Parties' alleged failure to file a "Corporate Ownership Statement" in his Recusal Motions, the issue was unrelated to recusal and therefore not addressed by the Recusal Order. The Panel has jurisdiction to hear appeals of final orders. 28 U.S.C. § 158(a), (b). Because there was no final order on the issue of the "Corporate Ownership Statement," we lack jurisdiction over that matter.[5]

## B.  Jurisdiction

Hayden argues on appeal that the bankruptcy court lacked jurisdiction to decide the recusal issue because it was initiated after

---

[5] To the extent Hayden's filings could be liberally construed to include that issue, Rule 7007.1(a) requires a nongovernmental corporation to file a corporate ownership statement when it is "a party to an adversary proceeding." Hayden's chapter 13 bankruptcy and Western Steel Nevada's involuntary bankruptcy are not adversary proceedings, and thus, no statement is required. In the Adversary Action, Western Steel Alabama was dismissed as a defendant on January 9, 2024, well before Hayden filed his motion for recusal in the Adversary Action on March 14, 2024. Hayden's argument that the Recusal Order should be reversed on jurisdictional grounds for failure to file a corporate ownership statement is without merit.

16

dismissal in two of the cases.[6] Hayden further argues in his reply brief that the district court rather than the bankruptcy court had jurisdiction.

Hayden argues that his Recusal Motions, which were filed and reviewed post-dismissal, were improper because "[i]n all events, a 'bankruptcy court does not have jurisdiction . . . to grant new relief independent of its prior rulings once the underlying action has been dismissed.'" *See In re Soria*, No. 19-01812-WLH7, 2020 WL 982807, at *2 (Bankr. E.D. Wash. Feb 28, 2020) (quoting *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989)). Hayden's jurisdiction arguments fail.

A bankruptcy court's jurisdiction "continues over related, post-closing motions." *Menk v. Lapaglia* (*In re Menk*), 241 B.R. 896, 912 (9th Cir. BAP 1999). Furthermore, a "bankruptcy court retains subject matter jurisdiction to *interpret* orders entered prior to dismissal of the underlying bankruptcy case, and to dispose of ancillary matters." *In re Taylor*, 884 F.2d at 481(internal citations omitted). Courts have jurisdiction, and have a duty, to decide recusal motions. *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986). Recusal is an ancillary matter which does not grant new

---

[6] Hayden also argues the bankruptcy court lacked jurisdiction over the sanctions and vexatious litigant motions. As discussed in the preceding section, the scope of Hayden's appeal does not include the sanctions matter because such an appeal would not be timely. Therefore, the issue of the bankruptcy court's jurisdiction over the sanctions motion is not before us. Similarly, Hayden raises arguments concerning the vexatious litigant matter. However, Hayden has appealed the bankruptcy court's vexatious litigant order in a separate, unrelated appeal. Accordingly, the question of the bankruptcy court's jurisdiction over the vexatious litigant matter is similarly not before us.

relief. Hayden's arguments that the bankruptcy court lacked post-dismissal jurisdiction over the issue of recusal lacks merit.

Furthermore, we find it dubious that Hayden would argue lack of jurisdiction over his own Recusal Motions.

Accordingly, the bankruptcy court had jurisdiction to decide the Recusal Motions.[7]

## C.  Was recusal required?

"A bankruptcy judge's disqualification is governed by 28 U.S.C. § 455. The judge is disqualified from presiding over a proceeding or contested matter in which a disqualifying circumstance arises—and, when appropriate, from presiding over the entire case." Rule 5004(a). A judge has a "duty to sit when there is no legitimate reason to recuse." *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)). In evaluating recusal motions, judicial impartiality is presumed, and the substantive standard is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Seidel v. Durkin* (*In re*

---

[7] Hayden additionally questions jurisdiction based on mandatory withdrawal of reference under 28 U.S.C. § 157(d), claiming the present case is premised on "interpretation of state and federal securities laws." In general, the Panel will not consider an argument on appeal that was not raised and adequately argued in the bankruptcy court. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Because Hayden did not raise this issue in the underlying bankruptcy case, the Panel declines to consider the issue.

*Goodwin*), 194 B.R. 214, 222 (9th Cir. BAP 1996) (cleaned up); *see also Liteky v. United States*, 510 U.S. 540, 548–55, (1994).

If the basis of the recusal motion is allegations of bias or prejudice, then generally, the bias or prejudice must stem from some extrajudicial source. *Liteky*, 510 U.S. at 554–56. An extrajudicial source is a source other than "conduct or rulings made during the course of the proceeding." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1988). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion" absent evidence that the ruling was based on a high degree of favoritism or antagonism. *Liteky*, 510 U.S. at 555.

If no evidence of extrajudicial sources of bias or prejudice exists, then a charge of partiality must be supported by evidence that the judge exhibited "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* Importantly, "factual allegations do not have to be taken as true," and a "judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation." *Lopez v. Behles* (*In re Am. Ready Mix, Inc.*), 14 F.3d 1497, 1501 (10th Cir. 1994) (citations omitted); *see also Com. Paper Holders v. Hine* (*In re Beverly Hills Bancorp*), 752 F.2d 1334, 1341 (9th Cir. 1984) (adverse rulings alone are legally insufficient to require recusal, even when the number of such adverse rulings is extraordinarily high on a statistical basis).

Hayden's Recusal Motions asserted vague allegations of Judge Spraker's purported partiality towards the Alabama Parties. On appeal,

19

Hayden argues that we should remand the Recusal Order in each case on jurisdictional grounds, rather than because the bankruptcy court abused its discretion in denying recusal. As previously discussed, the bankruptcy court properly determined it had jurisdiction to decide the Recusal Motions.

The Recusal Order found that Hayden's demand for recusal was based solely on Judge Spraker's rulings, statements, and conduct in the bankruptcy cases and Adversary Action. This finding is supported by the record. The conduct Hayden cited to support recusal occurred almost entirely within the bankruptcy cases, and Hayden failed to assert that the bias or prejudice stemmed from an extrajudicial source.

For instance, Hayden implausibly asserted that Judge Spraker's judicial notice of the First Alabama Judgment evidenced Judge Spraker's "loyalty" to Cashion. Hayden also argued that Judge Spraker permitted Schwarz to participate at a hearing without filing corporate disclosure statements, and this revealed that Cashion used his wealth to influence Judge Spraker. In sum, these arguments concern conduct within the bankruptcy cases and fail to attribute the allegations of bias to any extrajudicial source. Nor does any of Hayden's cited conduct demonstrate favoritism or antagonism. *See Strand v. Clark* (*In re Clark*), No. CC-11-1322-KiMkH, 2012 WL 1911926, at *1 n.4 (9th Cir. BAP May 25, 2012) (quoting *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990)) ("'It is well-accepted that federal courts may take judicial notice of proceedings in other courts if

20

those proceedings have relevance to the matters at hand.'"); *see also supra* note 5 (explaining why Western Steel Alabama did not need to file a "Corporate Ownership Statement" in the Adversary Action).

Hayden alleges a purported "ex parte" communication between Judge Spraker and Schwarz occurred at the March 14, 2024 hearing on the order to show cause in the Adversary Action. Hayden asserts that at this hearing, Judge Spraker instructed Schwarz to file a motion for declaratory relief. However, the hearing transcript is devoid of Judge Spraker providing legal advice or otherwise directing Schwarz to file a motion for declaratory relief. Accordingly, the record supports the bankruptcy court's finding that Hayden failed to provide extrajudicial evidence to support his allegation of Judge Spraker's bias or prejudice.

The bankruptcy court additionally concluded Hayden lacked tangible evidence to support his allegations, and merely provided "suspicions, allegations, and innuendo" of purported corruption. This conclusion is similarly well-supported by the record. Hayden's allegations are, at best, unfounded suspicions. Hayden had multiple opportunities to provide proof of the alleged "corruption," but failed to make the necessary showing in his pleadings or at any hearing. No extrajudicial source indicates Judge Spraker was biased or prejudiced against Hayden, and Hayden does not provide any extrajudicial source or evidence on appeal.

In addition, the bankruptcy court recited several of Judge Spraker's rulings towards Hayden on substantive issues to demonstrate a lack of

favoritism or antagonism. This conclusion is well-supported by the record. In Hayden's chapter 13 bankruptcy case, the case had already been dismissed by the time Judge Spraker was assigned. Moreover, although the bankruptcy court retained jurisdiction to hear the remaining issue of sanctions against Hayden, Judge Spraker awarded sanctions solely in the amount of attorneys' fees and declined to impose a two-year nationwide ban on filing. In the Western Steel Nevada case, Judge Spraker denied the Alabama Parties' motion to dismiss and converted the case to a chapter 7 instead of dismissing it. In the Adversary Action, Judge Spraker granted Hayden's request for dismissal but retained jurisdiction to hear and decide the issue of sanctions. The sanctions issue had not yet been resolved by the time Hayden moved for recusal in that case. As the bankruptcy court properly concluded, Hayden failed to provide specific instances of Judge Spraker's conduct that suggest a high degree of favoritism or antagonism.

Accordingly, the bankruptcy court did not abuse its discretion in denying Hayden's recusal motions in any of the three cases and the Recusal Orders should be affirmed.

## CONCLUSION

For the reasons stated above, we AFFIRM.